Present: All the Justices

BALZER AND ASSOCIATES, INC.

v.  Record No. 950052

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
November 3, 1995

THE LAKES ON 360, INC., ET AL.

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

This appeal arises from a suit by a judgment creditor to void a transfer of real property by its judgment debtor. At the conclusion of the creditor's case, the chancellor found that the debtor had no equity in the property transferred, thus precluding a finding of fraudulent intent, and granted the debtor's motion to strike the evidence of the creditor. The issue we consider is whether the chancellor erred in granting the motion to strike. Because the creditor pled and presented a prima facie case sufficient to prove both a void fraudulent transfer, Code § 55-80, and a voidable voluntary transfer, Code § 55-81, we reverse.

The following material facts are not in dispute. Bradley Investments, Ltd. (Bradley) initially purchased the property in question on July 1, 1988, from Howard F. and Alpha T. Hancock (the Hancocks) in exchange for a $1,000,000 purchase money note secured by a deed of trust. Contemporaneously with its acquisition of the property, Bradley further encumbered the property with a second deed of trust to secure a $4,200,000 acquisition and development line of credit from Home Federal Savings Bank (the bank).

In October, 1991, Bradley became indebted to Balzer and

Associates, Inc. (Balzer).  Balzer received a judgment against Bradley in the amount of $28,773.48 plus fees and prospective interest on April 20, 1992.

Prior to February, 1992, Bradley was in default on its debt to the Hancocks on the purchase money note and the bank for funds expended from the acquisition and development line of credit.  On February 4, 1992, Robert A. Conner (Conner), president of Bradley and husband of its principal owner, purported to transfer the property to The Lakes on 360, Inc. (The Lakes), which at that time had not received its corporate charter.  Conner received a check made out to him personally for $5,000 as part of the transaction.

On February 20, 1992, six days after The Lakes received a corporate charter showing that the corporation was controlled by the Hancocks, Conner, by quitclaim deed, again purported to transfer the property to The Lakes in order to correct a mistake in the February 4, 1992 deed.  No additional consideration was exchanged.

On May 11, 1992, Balzer filed a Bill of Complaint seeking to void the transfer of the property, naming as defendants Bradley and The Lakes (jointly, the defendants).  Balzer specifically alleged that ". . . no consideration whatever passed from THE LAKES ON 360, INC. to Bradley for the Deed[s]; that Bradley would be rendered insolvent by the conveyance of the Property purportedly conveyed by the Deeds; [and] that the same [were] made to hinder, delay and defraud [Balzer] and other creditors."
 In its prayer for relief, Bradley asked that the deeds "be

declared void and of no effect."  At trial, Conner testified that the $5,000 payment was made directly to him since Bradley was no longer a going concern.

It was further adduced through testimony or by stipulation that Bradley was insolvent at the time of the transfer; the Hancocks were Conner's uncle and aunt; The Lakes took the conveyance with the understanding that the property was subject to foreclosure by the Hancocks and the bank owning the deed of trust securing the acquisition and development loan; the outstanding amounts of the two loans exceeded $4,000,000; The Lakes was aware that additional mechanic's liens suits were pending against Bradley at the time of the conveyance; following the transfer, The Lakes obtained an additional $1,000,000 loan secured by the property; and, thereafter, the Hancocks subordinated their deed of trust to that of the bank.

At the conclusion of Balzer's case-in-chief, the defendants moved to strike the evidence.  The chancellor, while concluding that the conveyance was "certainly questionable," nonetheless found that, as "the property had no equity in it at the time of the transfer," there was insufficient evidence of fraud on the part of Conner acting as an agent for Bradley to support voiding the transfer.  On that basis, he granted defendants' motion to strike and dismissed Balzer's Bill of Complaint with prejudice.

The chancellor erroneously based his ruling on the presumption that the transfer was voidable only upon a showing of actual fraud.  In Virginia, an existing creditor may seek to void a transfer of property by the debtor under one of two theories.

The transfer can be alleged to have been made for the purposes of delaying, hindering, or defrauding the debtor's just creditors, both existing and future. Such transactions are fraudulent acts and are void except against bona fide transferees without knowledge of the fraudulent intent. Code § 55-80; see also Consolidated Tramway Co. v. Germania Bank, 121 Va. 331, 335, 93 S.E. 572, 573 (1917).

In the alternative, the transfer can be alleged to have been made without receipt by the debtor of "consideration deemed valuable in law" while the debtor was, or as a result of the transfer became, insolvent. Code § 55-81. In such cases, fraud or other malicious intent is not an element required to prove the voidability of the transfer. See Consolidated Tramway, 121 Va. at 335-36, 93 S.E.2d at 573, and Witz, Beidler & Co. v. Osburn, 83 Va. 227, 229, 2 S.E. 33, 34-35 (1887) (distinguishing fraudulent and voidable voluntary transfers). In other words, a transfer undertaken by an insolvent debtor, or by a debtor who is thereby rendered insolvent, without return to him of valuable consideration is de jure fraudulent as against any existing creditor without any need to prove intent to defraud. Johnston v. Gill, 68 Va. (27 Gratt.) 587, 592 (1876). "The principle upon which voluntary conveyances are held void as to existing creditors is that a man should be just before he is generous." Battle v. Rock, 144 Va. 1, 15, 131 S.E. 344, 348 (1926).

Here, Balzer's allegations in the Bill of Complaint and the nature of the relief sought adequately pled alternative theories of fraudulent and voidable voluntary transfer in the context of

Code §§ 55-80 and -81.  The requirements for stating a cause of action are not so strict as to demand specificity beyond that necessary to "clearly [inform] the opposite party of the true nature of the claim or defense" pled.  Rule 1:4(d); see also Code § 8.01-275; cf. Fox v. Deese, 234 Va. 412, 422-23, 362 S.E.2d 699, 705 (1987) (holding that Rule 1:4 and correlative statutes represent "a radical departure" from rules of common-law pleading).  Moreover, where the allegations of a pleading support two alternative theories of recovery, the pleading of one is not made insufficient by the insufficiency of the other.  Rule 1:4(k); Code § 8.01-281.  It is thus axiomatic that at the trial of a pleading which adequately states alternative theories of recovery, a motion to strike may not be sustained where the evidence would, if unrebutted, support recovery under at least one theory.

It is firmly established that, in considering a motion to strike a party's evidence, the chancellor must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the non-moving party.  Any reasonable doubt about the sufficiency of the evidence must be resolved in favor of the non-moving party.  Shepherd v. Colton, 237 Va 537, 540, 378 S.E.2d 828, 829-30 (1989).

We first consider whether the motion to strike should have been sustained with respect to the allegation of fraudulent transfer pursuant to Code § 55-80.  The chancellor based his ruling on the finding that Bradley had no equity, actual or "of redemption", in the property.  Balzer asserts that, since no

evidence of the actual value of the property was adduced at trial, this finding is not supported by the record. We agree with Balzer.

Without direct evidence of the present value of the land, including the improvements which had been made since its acquisition, the mere fact of Bradley's insolvency was insufficient to establish that it had no equity in the property. Moreover, the evidence available to the chancellor, including the original maximum credit available through the acquisition and development loan, the fact of improvements to the property which were subject to the mechanic's liens, and the additional development money available to The Lakes upon its acquisition of the property, would, under the standard of review described above, support the reasonable inference of the property having value at or above the established level of the encumbrances upon it.

In light of the close familial relationship between the parties, the apparent absence of adequate consideration, and the absence of certain evidence concerning the value of the property, we hold that Balzer made out a prima facie case of a fraudulent transfer and that the chancellor thus erred in granting the motion to strike under this theory of recovery.

Similarly, Balzer's evidence, viewed in this light, would have supported a finding of a voluntary transfer by an insolvent debtor without consideration valuable in law. The transfer from Bradley to The Lakes did not extinguish the debt to the Hancocks. Rather, the transfer occurred with the understanding that the

property remained subject to foreclosure by the Hancocks. In addition, the $5,000 payment was made to Conner individually and not to Bradley. Finally, in the absence of direct evidence establishing that the value of the property did not exceed the indebtedness against it, the remaining evidence, when viewed in the light most favorable to Balzer, suggests a lack of consideration <u>to Bradley</u> valuable in law. Such a transfer would be void as to Balzer, an existing creditor, since it left the debtor insolvent and was not made for valuable consideration in law. Accordingly, the chancellor erred in striking the evidence as to this theory of recovery.

Once a party has established a <u>prima facie</u> case in support of its claim that a transfer is voidable, the burden of producing evidence to rebut the <u>prima facie</u> case shifts to the opposing party. We cannot say whether the defendants would have been able, given the opportunity to present evidence of the value of the property and of the consideration received by Bradley for the transfer, to rebut Balzer's evidence, or at least bring into equipoise the ultimate questions of fraudulent intent pursuant to Code § 55-80, and lack of valuable consideration at law pursuant to Code § 55-81. <u>See</u> <u>Pullen v. Fagan</u>, 204 Va. 601, 604, 132 S.E.2d 718, 720 (1963).

Accordingly, we will reverse the summary judgment and remand the proceeding for a new trial.

<u>Reversed and remanded</u>.