Present:  All the Justices

VICKI LYNN MITCHEM

v.  Record No. 990399   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        January 14, 2000
DURWOOD L. COUNTS


              FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
                      Duncan M. Byrd, Jr., Judge


     In this appeal, we consider two issues: 1) whether Code

§ 2.1-725(D) of the Virginia Human Rights Act (VHRA), Code

§§ 2.1-714 through –725, bars a common law action for wrongful

termination of employment based on a violation of public policy

not reflected in the VHRA, when the conduct alleged also

violates a public policy reflected in the VHRA; and 2) whether a

violation of the public policies embodied in two criminal

statutes may support such a common law action.

     Vicki Lynn Mitchem filed a motion for judgment against her

former employer Durwood L. Counts,[1] alleging that he had

wrongfully discharged her from her position as an insurance

marketing representative after she refused to engage in a sexual

relationship with him.  Mitchem asserted that Counts repeatedly

tried to persuade her to have a "sexual affair" with him and

_____

     [1]Counts was an insurance agent who, at all times pertinent
to this action, employed no more than five persons.

promised in return that she would receive money and "a lot of nice things."

In her motion for judgment, Mitchem also asserted that, on many occasions, Counts "massaged her shoulders, patted her buttocks, touched her leg, rubbed her knee, and hugged her against her will."  Mitchem further alleged that on another occasion, Counts "pulled [Mitchem] onto his lap, wrapped both arms around her, and tried to kiss her on the lips."  Finally, Mitchem alleged that because she "steadfastly refused to enter into a sexual relationship with Counts," he retaliated in several ways and ultimately fired her in May 1998.

Relying on these allegations, Mitchem asserted in Count I of her motion for judgment that her discharge violated the Commonwealth's public policy "that all persons . . . are entitled to pursue and maintain employment free of discrimination based upon gender."  She also claimed, among other things, that the Commonwealth's public policy is violated when a female employee "must either consent to the commission of a crime against her person, or engage in a conspiracy to commit a crime, or both, to maintain her employment."  Mitchem cited several sources of public policy in support of her claim, including the VHRA and Code §§ 18.2-57, -344, and -345.[2]

_____

[2]In Count II of her motion for judgment, Mitchem asserted a claim of assault and battery against Counts, which the trial

2

Counts filed a demurrer to Count I, which the trial court sustained. The court concluded, in essence, that the 1995 amendments to the VHRA eliminated the VHRA as a source of public policy to support a common law cause of action for wrongful termination. The trial court also held that Code §§ 18.2-57, -344, and -345 do not articulate public policies that will support a common law action for wrongful termination.[3] The court entered an order dismissing Count I of Mitchem's action with prejudice, and Mitchem appeals from this judgment.

Although Mitchem based her wrongful termination action in part on public policies found in the VHRA and sources of law other than criminal statutes, she withdrew this part of her claim during her oral argument before this Court. She argued that the criminal statutes identified in her motion for judgment embody a public policy against the commission of the stated acts of a sexual nature and, thus, that an employer is subject to a

court dismissed without prejudice on Mitchem's request for a nonsuit.

[3]The trial court also held that Mitchem could not base a claim for wrongful discharge on Title VII of the 1964 Civil Rights Act, the Constitution of the United States, the Declaration of Independence, or the Constitution of Virginia. In addition, the trial court concluded that because Counts' business had fewer than five employees, Mitchem could not seek recovery under the limited statutory remedies provided by Code § 2.1-725(B) and (C) for workers whose employers have more than five but fewer than 15 employees. Mitchem does not contest these rulings in this appeal.

common law wrongful termination claim if he discharges an at-will employee because she refuses to commit those criminal acts.

Mitchem contends on appeal that she was not discharged from her employment because of her gender, but because she rejected her employer's demands that she perform sexual acts in violation of Code § 18.2-344, which prohibits fornication, and Code § 18.2-345, which prohibits lewd and lascivious cohabitation. She also asserts that she was discharged because she would not "consent to commission of a battery upon her person," in violation of Code § 18.2-57.[4]

In response, Counts (the employer) argues that Code § 2.1-725(D) abrogates Mitchem's common law cause of action because the allegations of wrongful termination, if proved, would violate the public policies reflected in the VHRA. In support of this argument, the employer notes that the facts in this case are very similar to those alleged by a plaintiff in Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 439 S.E.2d 328

---

[4]All these crimes are classified as misdemeanors. On brief, Mitchem also cited Code § 18.2-346, which prohibits acts of prostitution, and § 18.2-67.4, which prohibits sexual battery. However, since Mitchem did not cite these statutes in her motion for judgment, we will not consider these additional statutes in reviewing the trial court's action sustaining the demurrer to Count I. See Breeding v. Hensley, 258 Va. 207, 212, 519 S.E.2d 369, 371 (1999).

4

(1994),[5] in which we held that an employer's conduct and termination of that plaintiff violated the public policy against gender discrimination stated in the VHRA.  The employer also asserts that our decision in Conner v. National Pest Control Ass'n., 257 Va. 286, 513 S.E.2d 398 (1999), requires dismissal of Mitchem's action based on our application in that case of the preclusive language of Code § 2.1-725(D).  Finally, the employer contends that criminal statutes will not support Mitchem's common law action because they do not "announce public policies in their texts" and to use the statutes in this manner would eviscerate the employment-at-will doctrine.

Although Mitchem has withdrawn her reliance on the VHRA as a source of public policy to support her wrongful termination action, we nevertheless begin our analysis with the VHRA because its limiting provision in Code § 2.1-725(D) is the controlling statute in this appeal.  That provision, included in the 1995 amendments to the VHRA, states in relevant part:

> Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.  Code § 2.1-725(D).

---

[5]This Court's opinion in Lockhart addressed two separate cases.  Nancy L. Wright was the plaintiff in one of the cases. She alleged employment discrimination based on gender, while the other plaintiff, Lawanda Lockhart, alleged employment discrimination based on race.

5

Citing Doss v. Jamco, 254 Va. 362, 492 S.E.2d 441 (1997), the trial court held that the 1995 amendments to the VHRA bar Mitchem from asserting a common law action for wrongful termination based on any of the sources of public policy set forth in her motion for judgment. In Doss, we held that "in amending the [VHRA] by adding subsection D to Code § 2.1-725 in 1995, the General Assembly plainly manifested its intention to alter the common law rule with respect to '[c]auses of action based upon the public policies reflected in [the VHRA].'" Id. at 371, 492 S.E.2d at 446.

Following Doss, we next addressed the scope of Code § 2.1-725(D) in Conner. There, the plaintiff alleged that she had asserted a valid cause of action for wrongful termination because, in addition to the public policy against gender discrimination in the VHRA, her employer's conduct violated the same public policy embodied in sources other than the VHRA. 257 Va. at 288, 513 S.E.2d at 399. We disagreed, holding that "the General Assembly, in enacting the 1995 amendments to the VHRA, eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere." Id. at 290, 513 S.E.2d at 400.

Our holdings in Conner and Doss, however, do not address the issues before us. In those cases, unlike the present case,

6

the plaintiffs did not identify any public policy different from those reflected in the VHRA as the basis for their common law claims.  Thus, in those cases, we did not address the central issue in the present appeal, whether Code § 2.1-725(D) bars a common law action for wrongful termination based on public policies not reflected in the VHRA, when the conduct alleged in the motion for judgment also violates a public policy reflected in the VHRA.

This issue of first impression is raised by Mitchem's allegations in her motion for judgment that the employer's conduct violated the Commonwealth's public policies against fornication and lewd and lascivious behavior embodied in Code §§ 18.2-344 and -345.  Code § 18.2-344 provides that an unmarried person who voluntarily has sexual intercourse with any other person is guilty of fornication.  Code § 18.2-345, in relevant part, prohibits persons not married to each other from lewdly and lasciviously associating and cohabiting together.

In considering whether Code § 2.1-725(D) defeats Mitchem's reliance on these public policies as a basis for her wrongful termination action, we first observe that the preclusive language of Code § 2.1-725(D) was enacted by the legislature in derogation of the common law.  Statutes in derogation of the common law must be strictly construed and not enlarged by construction beyond their express terms.  Chesapeake & O. Ry.

7

Co. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965); see Williams v. Matthews, 248 Va. 277, 282-83, 448 S.E.2d 625, 628 (1994); Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992). A statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language because there is a presumption that no change was intended. Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988); Strother v. Lynchburg Trust & Savings Bank, 155 Va. 826, 833, 156 S.E. 426, 428 (1931). Thus, "[w]hen an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." Boyd, 236 Va. at 349, 374 S.E.2d at 302; Newport News v. Commonwealth, 165 Va. 635, 650, 183 S.E. 514, 520 (1936).

We must construe Code § 2.1-725(D) narrowly under these principles because the VHRA does not encompass the entire subject of common law causes of action for wrongful termination of employment. The relevant language of Code § 2.1-725(D) provides that "[c]auses of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." (Emphasis added.) This provision, by its plain terms, abrogates

8

only common law causes of action for wrongful termination that are based on the public policies reflected in the VHRA. Thus, we conclude that Code § 2.1-725(D) does not prohibit a common law cause of action for wrongful termination based on the public policies against fornication and lewd and lascivious behavior, because those policies are not reflected in the VHRA.

We find no merit in the employer's contention that since his alleged conduct also violated the public policy in the VHRA against gender discrimination, he cannot be subject to a wrongful termination action for firing an employee who refused to commit the crimes at issue. First, as shown above, the plain language of Code § 2.1-725(D) does not contain such a prohibition.

Second, the same conduct or occurrence can support more than one theory of recovery. Balzer and Assoc. v. The Lakes on 360, 250 Va. 527, 531, 463 S.E.2d 453, 456 (1995); see Code § 8.01-272; Rule 1:4(k); Fox v. Deese, 234 Va. 412, 422-23, 362 S.E.2d 699, 705 (1987). Moreover, when a plaintiff has alleged facts supporting more than one theory of recovery, the pleading of one theory is not rendered insufficient by the insufficiency of the other theory. Balzer, 250 Va. at 531, 463 S.E.2d at 456. Thus, the legal insufficiency of Mitchem's allegations of wrongful termination based on the public policies set forth in

the VHRA does not invalidate her claim founded on the public policies embodied in Code §§ 18.2-344 and -345.

Third, the employer's argument is untenable because, when extended to its logical conclusion, the argument would permit an employer to discharge any employee who refuses to commit a crime at the employer's direction, as long as the employer's conduct also violates a public policy reflected in the VHRA.  The public policy stated in the VHRA "safeguard[s] all individuals within the Commonwealth from unlawful discrimination because of race, color, [and] religion."  Code § 2.1-715 (emphasis added).  Thus, under the employer's view, an African-American employee could not pursue a common law action for wrongful termination if she were discharged for refusing to burn a cross on the property of another African-American with the intent to intimidate that person.  The African-American employee would be a member of the class of persons protected by the VHRA public policy because she would have been fired based on "unlawful discrimination because of race."  Id.; see City of Virginia Beach v. Harris, 259 Va. ___, ___, ___ S.E.2d ___, ___ (2000), decided today; Dray v. New Market Poultry Prod., Inc., 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999).

The burning of a cross is a felony under Code § 18.2-423. Under the employer's theory, the language of Code § 2.1-725(D) would shield the employer from a common law action for wrongful

10

termination for violation of the public policy underlying Code § 18.2-423, because the conduct also would violate the public policy against racial discrimination expressed in the VHRA.

Similarly, under the employer's view, a Jewish employee could not maintain a common law action for wrongful termination if he were discharged for refusing to paint a swastika on a synagogue with the intent to intimidate worshipers. This employee would be a member of the class of persons protected by the public policy stated in the VHRA because he would have been fired based on "unlawful discrimination because of . . . religion." Code § 2.1-715; see Harris, 259 Va. at ___, ___ S.E.2d at ___; Dray, 258 Va. at 191, 518 S.E.2d at 313.

The placement of a swastika on a synagogue is a felony under Code § 18.2-423.1. Under the employer's theory, the language of Code § 2.1-725(D) would shield the employer from a common law wrongful termination action for violation of the public policy underlying Code § 18.2-423.1, because the employer's conduct also would violate the VHRA public policy against religious discrimination.

Accordingly, we reject the employer's argument because it would require us effectively to amend Code § 2.1-725(D) by adding a provision prohibiting causes of action based on public policies not reflected in the VHRA. Such a holding would usurp the function of the General Assembly, violate the proper

11

construction of a statute in derogation of common law, and allow repugnant consequences that were never intended by the General Assembly when it enacted Code § 2.1-725(D).

The employer argues, however, that the public policies embodied in Code §§ 18.2-344 and -345 cannot support a common law action for wrongful termination because those statutes do not expressly state such public policies. We find no merit in this contention. Laws that do not expressly state a public policy, but were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the general public, may support a wrongful discharge claim if they further an underlying, established public policy that is violated by the discharge from employment. Harris, 259 Va. at ___, ___ S.E.2d at ___; see Miller v. SEVAMP, Inc., 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987); Bowman v. State Bank of Keysville, 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985). Further, as indicated above, to rely on such a statute in support of a common law action for wrongful termination, an employee must be a member of the class of persons that the specific public policy was designed to protect. Harris, 259 Va. at ___, ___ S.E.2d at ___; Dray, 258 Va. at 191, 518 S.E.2d at 313.

For example, in Bowman, we recognized a common law cause of action for wrongful termination based on the public policy underlying former Code § 13.1-32. That statute conferred on

12

stockholders the right to one vote for each outstanding share of stock held.  Although former Code § 13.1-32 did not expressly state a public policy, we held that the statute provided a basis for a common law action for wrongful termination brought by two employee stockholders of a bank.  We concluded that the statute embodied the public policy that a stockholder's right to vote shall be exercised free of duress and intimidation by corporate management.  229 Va. at 540, 331 S.E.2d at 801.

In the present case, the absence of an express statement of public policy in Code §§ 18.2-344 and -345 does not preclude their use as a basis for a common law action for wrongful termination.  These criminal statutes were enacted for the protection of the general public, and Mitchem is a member of that class of persons whom these statutes were designed to protect.  See Harris, 259 Va. at ___, ___ S.E.2d at ___; Miller, 234 Va. at 468, 362 S.E.2d at 918; Dray, 258 Va. at 191, 518 S.E.2d at 313.  Further, the public policies inherent in Code §§ 18.2-344 and -345 are equally, if not more, compelling than the public policy in Bowman that provided the basis for our recognition of a narrow exception to the employment-at-will rule.

We do not share the employer's concern that recognition of a common law cause of action for violation of these public policies should be rejected as an incursion into the employment-

13

at-will doctrine. We have narrowly construed the public policy exception to that doctrine, and we have applied that exception in few instances. Certainly, the General Assembly did not intend that the employment-at-will doctrine or the provisions of Code § 2.1-725(D) serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity. Thus, we conclude that since Mitchem's common law action based on the public policies embodied in Code §§ 18.2-344 and -345 is not abrogated by Code § 2.1-725(D), her action based on those policies falls within the scope of the narrow public policy exception to the employment-at-will rule recognized in Bowman.

We disagree with the employer's assertion that our holding in Lockhart requires a different result. There, we approved a wrongful termination action involving conduct very similar to that alleged by Mitchem based on the public policy against gender discrimination in the VHRA. 247 Va. at 101-02, 439 S.E.2d at 329-30. However, the fact that this type of conduct will no longer support a theory of recovery based on the VHRA, or other sources of law reflecting this same public policy, does not affect Mitchem's alternate theory of recovery based on the different public policies embodied in Code §§ 18.2-344 and -345. Unlike the VHRA provision against gender discrimination relied on in Lockhart, Mitchem's theory of recovery based on Code

14

§§ 18.2-344 and -345 does not rely on any public policy reflected in the VHRA and, thus, is not precluded by Code § 2.1-725(D). Also, although the conduct Mitchem alleges would be an "unlawful discriminatory practice" within the meaning of Code § 2.1-716,[6] this conduct may still form the factual basis of a common law cause of action for wrongful termination when that action is not based on a public policy reflected in the VHRA. See Code § 2.1-725(D).

Finally, we conclude that the trial court did not err in dismissing the part of Count I in which Mitchem alleged that the employer wrongfully discharged her in violation of the public policy embodied in Code § 18.2-57, which establishes the crime of simple assault as a Class 1 misdemeanor. The trial court properly dismissed this claim because Mitchem did not allege that her employer discharged her for refusing to commit this crime. Instead, she alleged that she was fired for refusing to "consent to commission of a battery upon her person." However, had she consented to having the employer touch her, there would have been no crime of battery. Gnadt v. Commonwealth, 27 Va.

---

[6]Code § 2.1-716 provides: "Conduct which violates any Virginia or federal statute or regulation governing discrimination on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status or disability shall be an 'unlawful discriminatory practice' for the purposes of this chapter."

App. 148, 151, 497 S.E.2d 887, 888 (1998); see Banovitch v. Commonwealth, 196 Va. 210, 219, 83 S.E.2d 369, 375 (1954). Thus, the public policy embodied in Code § 18.2-57 does not support a wrongful termination action based on this allegation. When the trial court has reached the correct result for the wrong reason, we will assign the correct reason and affirm that result. Hartzell Fan, Inc. v. Waco, Inc., 256 Va. 294, 303, 505 S.E.2d 196, 202 (1998); Ridgwell v. Brasco Bay Corp., 254 Va. 458, 462, 493 S.E.2d 123, 125 (1997); Harrison & Bates, Inc. v. Featherstone Assoc. Ltd. Partnership, 253 Va. 364, 369, 484 S.E.2d 883, 886 (1997).

For these reasons, we will affirm the trial court's judgment dismissing the part of Mitchem's action for wrongful termination that is based on the public policy embodied in Code § 18.2-57.[7] We will reverse the trial court's judgment dismissing the part of Mitchem's action for wrongful termination that is based on the public policy embodied in Code §§ 18.2-344 and -345, and remand this remaining part of her action for trial.[8]

---

[7]Since Mitchem has withdrawn from her motion for judgment any reliance on public policies not based on criminal statutes, we do not consider the trial court's rulings with regard to those other sources of law.

[8]We distinguish our present holding from City of Virginia Beach v. Harris, 259 Va. ___, ___ S.E.2d ____ (2000), decided

16

Affirmed in part,
reversed in part,
and remanded.

JUSTICE KINSER, with whom CHIEF JUSTICE CARRICO and JUSTICE COMPTON join, dissenting in part and concurring in part.

I dissent in part from the majority's decision because I conclude that the employee in this case has not stated a viable cause of action. Thus, I would affirm the circuit court's judgment sustaining the employer's demurrer.

The majority states the issue in this case as "whether Code § 2.1-725(D) bars a common law action for wrongful termination based on public policies <u>not</u> reflected in the VHRA, when the conduct alleged in the motion for judgment also violates a public policy reflected in the VHRA." By accepting Vicki Lynn Mitchem's purported distinction between being fired because of "sex" discrimination and being fired because she refused to

today. In that case, a police officer was discharged from his employment for obtaining criminal warrants charging a superior officer with obstruction of justice and a related offense, because the superior officer had directed the police officer not to serve certain warrants on a criminal suspect. We held, among other things, that the officer did not state a valid cause of action for wrongful termination in reliance on the public policy expressed in Code § 18.2-460, which prohibits the obstruction of a law enforcement officer in the performance of his duties. We concluded that the police officer was attempting to use the statute as a shield to protect himself against the consequences of his decision to charge his superior officer with crimes. Unlike Mitchem in the case before us, the officer in <u>Harris</u> was not a member of the public for whose benefit the statute was enacted and, thus, could not state a claim for wrongful

17

engage in sexual conduct that would have allegedly violated certain criminal laws, the majority concludes that Code § 2.1-725(D) does not bar Mitchem's claim. To understand why I do not accept this distinction, it is important to first explain why the conduct in which Durwood L. Counts allegedly engaged constitutes "sex" discrimination in violation of a public policy reflected in the Virginia Human Rights Act (VHRA).

Mitchem's allegations that Counts fired her because she rebuffed his alleged sexual advances and refused to engage in a sexual relationship with him are remarkably similar to the facts alleged by plaintiff Wright in Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 439 S.E.2d 328 (1994). In that case, Wright alleged that her employer "approached her from behind, kissed her cheek" and "'physically seized her, grabb[ed] her and hugg[ed] her without her consent.'" Id. at 101-02, 439 S.E.2d at 329. She also alleged that her employer repeatedly made abusive, inappropriate, and harassing remarks to her, and ultimately told her to "get out" after she advised her employer that she did not intend to be subjected to that kind of treatment at work. Id. at 102, 439 S.E.2d at 330.

Even though she was an at-will employee, plaintiff Wright alleged that her termination was unlawful, and therefore

discharge based on the public policy embodied in that statute. See also, Dray, 258 Va. at 191, 518 S.E.2d at 313.

18

actionable, because it violated the public policy of Virginia as enunciated in the VHRA. The trial court disagreed and sustained the employer's demurrer, but this Court reversed that judgment. Id. at 106, 439 S.E.2d at 332. We concluded that Wright had pled a viable cause of action based upon "sex" discrimination. Id. at 104, 439 S.E.2d at 331. While not "retreat[ing] from our strong adherence to the employment-at-will doctrine[,]" the Court held

> that the narrow exception to that doctrine, which we recognized in Bowman, includes instances where, as here, [an] employee[] [is] terminated because of discrimination based upon gender . . . . The discharge[] of . . . Ms. Wright [is] allegedly tortious not because [she has] a vested right to continued employment, but because [her] employer[] misused the freedom to terminate the services of [an] at-will employee[] on the basis of . . . gender.

Id. at 106, 439 S.E.2d at 332.

In reaching its decision in Lockhart, the Court concluded that the nature of the alleged discriminatory conduct of Wright's employer fell within the scope of the public policy enunciated in the VHRA, "[t]o safeguard all individuals . . . from unlawful discrimination [in employment] because of . . . sex" Code § 2.1-715. In order to hold that Wright had pled a cause of action for wrongful discharge based on the public policy enunciated in the VHRA, we necessarily had to find that the alleged actions of her employer fell within the scope of the

19

phrase "discrimination because of . . . sex" in Code § 2.1-715.[9] Otherwise, Wright could not have utilized the VHRA as the source of public policy upon which to base her common law action for wrongful termination. Since the decision in Lockhart, we have continued to categorize the type of discrimination alleged by Wright as "gender discrimination." See Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98, 465 S.E.2d 806, 809 (1996); Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 126, 480 S.E.2d 502, 505 (1997).

Accordingly, even though Mitchem disavows any reliance on the VHRA, the sexual harassment that she allegedly endured prior to discharge, as well as Counts' termination of her employment because she refused to have a sexual relationship with him, if proven true, would violate a public policy reflected in the VHRA. The distinction that Mitchem attempts to make and which the majority accepts, that she was fired, not because of "sex," but because she refused to engage in conduct that would have violated certain criminal statutes, merely places a different label on "sex" discrimination and thus exalts form over substance. The re-labeling of her claim does nothing to alter

_____

[9] None of the other types of discrimination included in Code § 2.1-715 was implicated by the facts plaintiff Wright alleged.

20

the facts alleged by Mitchem or the law governing those allegations.  Thus, I do not accept that proffered distinction.[10]

Nevertheless, Mitchem insists that Counts discharged her because she refused to commit the crimes of fornication, and lewd and lascivious cohabitation, and would not consent to the commission of a battery upon her person.[11]  Thus, according to Mitchem, her termination violated the public policies contained in the criminal statutes making these acts unlawful, and the public policy that an employer cannot fire an employee for refusing to commit a crime.  I need not, as the majority does, decide whether those criminal statutes sufficiently enunciate public policies to support a Bowman-type cause of action by an at-will employee for unlawful termination because, even if they do, I conclude that Mitchem nonetheless is barred from maintaining her action against Counts.[12]

---

[10] Likewise, I do not believe that Mitchem stated alternative theories of recovery just because she alleged that her termination violated several public policies.

[11] I concur in the result the majority reaches with respect to Mitchem's reliance on Code § 18.2-57 proscribing assault and battery, but reach that conclusion for the reasons stated in this dissent.

[12] The majority's statement that the public policies behind the prohibitions against fornication, a class 4 misdemeanor punishable by a maximum $250 fine, and lewd and lascivious cohabitation, a class 3 misdemeanor punishable by a maximum $500 fine, are "equally, if not more compelling than the public policy in Bowman," which supported a stockholder's right to vote free of duress and intimidation by corporate management, does

21

After this Court's decision in Lockhart, the General Assembly amended the VHRA. One of the changes was the addition of subsection D to Code § 2.1-725, which prohibits a common law cause of action based upon the public policies reflected in the VHRA. Doss v. Jamco, Inc., 254 Va. 362, 372, 492 S.E.2d 441, 447 (1997).

In Conner v. National Pest Control, Ass'n, 257 Va. 286, 513 S.E.2d 398 (1999), we expanded upon the impact of subsection D, stating that "the General Assembly, in enacting the 1995 amendments to the VHRA, eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere." Id. at 290, 513 S.E.2d at 400. Thus, after Conner, an at-will employee in Virginia cannot maintain a cause of action based on the public policy exception to the at-will employment doctrine if the public policy is one that is "reflected" in the VHRA, even when the employee does not rely on or cite the VHRA because the policy is found in other statutes.

Even if the majority is correct in concluding that Virginia's public policy protects an at-will employee from being terminated as a result of refusing to violate the Commonwealth's criminal laws, the facts alleged in this case, if proven, would

not support the majority's conclusion that these criminal statutes have a sufficient public policy underlying them to

contravene not only that public policy, but also the public policy of safeguarding individuals from sex discrimination in employment, as reflected in the VHRA. Thus, I believe that Mitchem cannot maintain this cause of action. See Conner, 257 Va. at 290, 513 S.E.2d at 400.

I recognize that the present case is slightly different from Conner to the extent that, in support of her claim that she was discharged in contravention of a public policy, Mitchem cites a policy not contained in the VHRA, specifically her right to refuse to commit a crime. Conner, on the other hand, asserted that her discharge from employment violated the public policy against discrimination based on gender, which is a policy reflected in the VHRA, but she cited statutes other than the VHRA as the source of that public policy. Id. at 288, 513 S.E.2d at 399. I believe that this is another distinction without a difference, and that this Court's decision in Conner is controlling because, as I have already noted, Counts' alleged conduct, if proven, would violate the public policies reflected in the VHRA. Thus, I conclude that Mitchem's "[c]ause[] of action [is one] based upon the public policies reflected in [the VHRA]," Code § 2.1-725(D), despite her attempt to place a different label on it.

---

support a Bowman-type cause of action.

By permitting her cause of action to proceed, the majority creates an avenue through which virtually all employees asserting allegations similar to Mitchem's can bypass the General Assembly's clear intent, as expressed in Code § 2.1-725(D), to "abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public policies reflected in the [VHRA]." Doss, 254 Va. at 372, 492 S.E.2d at 447. The General Assembly's purpose in enacting subsection D was to bar claims such as the one brought by Wright in Lockhart, yet the majority today ignores that clear intent by allowing allegations similar to those alleged by Wright to go forward despite the language of Code § 2.1-725(D).

Contrary to the majority's argument that Counts' position would bar a common law wrongful termination action by an employee discharged for refusing to engage in intimidatory conduct such as burning a cross on the lawn of an African-American, or painting a swastika on a synagogue, those causes of action would not be barred by Code § 2.1-725(D). In the examples utilized by the majority, the discharges would not be in violation of the policies reflected in the VHRA because the employer's act of discrimination based on race or religion would not be directed toward the employee, but instead would be directed toward a third party. The public policies reflected in the VHRA are intended to prohibit discrimination in, *inter alia*,

24

employment, on the basis of the employee's "race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability."  Code § 2.1-715.  Those public policies protect an employee, not a third party, from being the subject or object of a discriminatory act.  In the majority's hypotheticals, the employee would not be the object of the discrimination but would be the person who refuses to engage in the discriminatory conduct.  In other words, Code § 2.1-725(D) abrogates causes of action based on policies reflected in the VHRA, but before those policies are implicated, the person against whom discriminatory conduct is directed must be a member of the class of persons protected by those policies.  Dray v. New Market Poultry Prod., Inc., 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999).  See also Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998), cert. denied sub nom. Brown v. Mayor and City Council of Baltimore, ___ U.S. ___, 119 S.Ct. 1577 (1999) (under Title VII, proof that plaintiff is a member of a protected group is required to establish a prima facie case); Childress v. City of Richmond, 134 F.3d 1205, 1209 (4th Cir.) (Luttig, J., concurring), cert. denied, 524 U.S. 927 (1998) ("in order to qualify as a 'person aggrieved' . . . [under Title VII], a plaintiff must be a member of the class of direct victims of conduct prohibited . . . and allege that he, not someone else, has been 'discriminated

against.'") (Emphasis added); <u>Drake v. Minnesota Mining & Manuf. Co.</u>, 134 F.3d 878, 884 (7th Cir. 1998) (in a Title VII associational discrimination case, "the key inquiries should be <u>whether</u> <u>the</u> <u>employee</u> <u>has</u> <u>been</u> <u>discriminated</u> <u>against</u> and whether that discrimination was 'because of' the employee's race.") (Emphasis added); Code § 2.1-725(B) (the plaintiff's age, not that of any other person, makes age discrimination contrary to the Commonwealth's public policy).[13]  Thus, under my view, employees terminated because they rightly refused to participate in such illegal and improper actions would not be barred by Code § 2.1-725(D) from pursuing common law wrongful termination claims.

CONCLUSION

My dissent may be viewed by some as sanctioning "sex" discrimination in the workplace.  In order to dispel any such misconception, I reiterate the thoughts expressed in the concurring opinion in <u>Conner</u>:

> Gender discrimination should not be countenanced in any manner and victims of such discrimination should be accorded a tort remedy that fully and fairly compensates

---

[13] "Associational discrimination cases," where, for example, a Caucasian claims he or she was discriminated against due to his or her relationship with an African-American, are permitted, <u>Drake</u>, 134 F.3d at 884; <u>Fiedler v. Marumsco Christian School</u>, 631 F.2d 1144, 1149-50 (4th Cir. 1980), but the hypotheticals presented by the majority do not fulfill the criteria for such an action.

26

them for injuries caused by an employer's repugnant conduct.

. . . .

However, the General Assembly of this Commonwealth has chosen to impose limitations on the right of a[n employee] to recover damages against an employer who discriminates . . . because of [the employee's] gender. . . .   And, this Court, which does not, and constitutionally cannot, act as a super-legislative body, is required to apply these restrictions as expressed by the General Assembly.

Conner, 257 Va. at 290-91, 513 S.E.2d at 400 (Hassell, J., concurring).

Unlike the majority, I continue to believe that the proper role of this Court is to interpret the law as enacted by the General Assembly, and not to function as a "super-legislative body."

For these reasons, I respectfully dissent in part and concur in part.