Present:  All the Justices

CITY OF VIRGINIA BEACH, ET AL.

v. Record No. 990535  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 14, 2000
BRENDHAN B. HARRIS

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
              Leonard B. Sachs, Judge Designate


     Brendhan B. Harris was terminated from his employment

as a police officer with the City of Virginia Beach (the

City) Police Department.  Harris subsequently filed this

common law cause of action for wrongful discharge against

the City and several members of the police department.  The

circuit court struck the City's evidence and held it liable

as a matter of law, and a jury returned a verdict against

the individual defendants and assessed damages against all

the defendants.  We awarded the City and the individual

defendants this appeal.

     On appeal, we will address two issues: (1) whether

Harris' claim against the individual defendants is barred by

the doctrine of res judicata because of prior proceedings in

federal court, and (2) whether Code § 18.2-460 and former §

15.1-138[1] embody sufficient public policies to support

_____

        [1] The General Assembly repealed Code § 15.1-138
effective December 1, 1997.  Code § 15.2-1704, which became
effective on that date, includes the provisions of Code §

Harris' cause of action for wrongful discharge based on the public policy exception to the employment-at-will doctrine articulated in Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985). See Stonega Coal and Coke Co. v. Louisville and Nashville R.R., 106 Va. 223, 55 S.E. 551 (1906) (stating that Virginia adheres to the employment-at-will doctrine). Because we conclude that the principle of res judicata bars relitigation of Harris' claim against the individual defendants, and because we do not find public policies in Code § 18.2-460 and former § 15.1-138 sufficient to support Harris' wrongful discharge cause of action, we will reverse the circuit court's judgment in favor of Harris.

In order to address these two issues, we must recite not only the facts surrounding Harris' discharge, but also the course of proceedings in the action he pursued in federal court before filing the present case.

FACTS AND FEDERAL COURT PROCEEDINGS

While on duty as a police officer on August 28, 1992, Harris investigated a burglary complaint at an apartment complex in the City. Upon arriving at the apartment complex, Harris spoke with Terry Grey, an occupant of one of

_____

15.1-138 that are pertinent to this appeal. We shall cite former Code § 15.1-138 in this opinion.

2

the apartments. Grey told Harris that a man claiming to be a maintenance worker used a key to enter her apartment while she was undressed. Harris then contacted the apartment manager to determine whether the alleged intruder was indeed a maintenance worker. In the meantime, Grey's sister, Dierdre Gamble, and Anthony Ortiz, a police officer who was assisting Harris, arrived at the apartment complex.

When the apartment manager returned with a work order pertaining to the alleged intruder, who was a maintenance worker, Grey snatched the work order from the apartment manager's hand and refused to return it when ordered to do so by Harris. Harris then grabbed Grey's wrist in an attempt to retrieve the work order from her and to enable him to handcuff her. At that point, Gamble attacked Harris from the rear, and they exchanged punches until Harris subdued her with pepper spray.

After placing Gamble in handcuffs, Harris transported her to a hospital, which was standard procedure when a police officer used pepper spray.[2] While en route to the hospital, Harris reported the incident to his supervisor, Lieutenant Gary Van Auken. Meanwhile, Ortiz also contacted Van Auken and related a version of the events that was

_____

[2] Grey was not arrested since she "took off" after the altercation between Harris and Gamble.

different from Harris' version.  Ortiz believed that Harris had mishandled the situation, causing it to escalate. Having received conflicting information about the incident, Van Auken consulted his supervisor and an attorney for the City, and decided that, pending the outcome of an investigation of the incident, formal charges should not be placed against Gamble nor should she be incarcerated.

After Gamble was treated at the hospital, Harris took her before a magistrate for the purpose of formally placing charges against her.  However, during the course of several telephone conversations between Van Auken and Harris, Van Auken advised Harris of the decision regarding Gamble and ordered Harris to not place charges against Gamble, and to release her into the custody of the police department's internal affairs division.  Harris complied with that order, but later, after consulting with an attorney, he obtained warrants against both Gamble and Grey.  Harris asked another police officer to serve the warrants on Gamble, but he kept the ones for Grey in his possession.

When Van Auken discovered that Harris had sworn out the warrants against Grey and Gamble, he instructed Harris to give him the unserved Grey warrants.  After complying with Van Auken's order, Harris observed Van Auken place the

4

warrants in his desk drawer.  According to Harris, those warrants were never served on Grey.

However, the warrants against Gamble were served.  When those charges came to trial, Van Auken presented the general district court with a letter from police Captain M.E. Beane to the City attorney, which requested that the charges against Gamble be "nolle prossed" because Harris had been ordered to not obtain the warrants until all the facts in the case had been reviewed by the police department.

Following that court proceeding, Harris received a letter from his precinct captain, E.E. Rorrer, ordering Harris to take no further action with regard to the incident in his capacity as a police officer, but advising Harris that he was free to act in his capacity as a private citizen.  Rorrer also informed Harris that if he had doubts with regard to what actions he could take, Harris should contact Rorrer personally.

Harris then filed an administrative complaint against Rorrer and Van Auken, alleging that they had obstructed justice.  Harris also complained that Ortiz had failed to assist him during the incident at the apartment complex.  An investigation of the complaint by the internal affairs division resulted in a finding that Harris' charges were unfounded.

The internal affairs division also received complaints from Grey and Gamble regarding Harris' conduct at the apartment complex. After an investigation of those complaints, Grey's allegations were determined to be founded, while Gamble's were not. Thereafter, a 24-hour suspension of Harris was recommended due to his insubordination and disobedience of an order. He appealed the recommended suspension.

On July 30, 1993, while on duty and in uniform, Harris appeared before a magistrate and obtained warrants for Van Auken, charging him with two violations of Code § 18.2-460, obstruction of justice, and a violation of Code § 18.2-469, delay in executing lawful process. After learning about Harris' actions, Police Chief Charles R. Wall met with Major Douglas G. McCloud; Captains Woodrow R. Baker, Beane, and Rorrer; and Van Auken. They agreed that Harris should be terminated for appearing in uniform before the magistrate and swearing out the warrants against Van Auken. According to the August 19, 1993 letter of termination from the chief of police, this action by Harris constituted disobedience of an order and abuse of his position. Harris appealed his

termination to the City's personnel board, which upheld his dismissal.[3]

Harris subsequently filed a lawsuit in the United States District Court for the Eastern District of Virginia against the City, Van Auken, Beane, Baker, McCloud, Wall and two other City officials, alleging that those defendants had violated his First Amendment rights by terminating him, and further asserting that he had been wrongfully discharged in violation of Virginia law.  Harris v. City of Virginia Beach, Virginia, No. 2:93cv1151 (E.D. Va. first amended complaint filed Dec. 7, 1993).  A jury returned a verdict for Harris on both counts of his lawsuit.  Importantly, with regard to his state law claim, the jury found both the City and the individual defendants liable, awarded compensatory and punitive damages against the City, but assessed only punitive damages against the individual defendants.  In post-trial orders, the district court directed the City to pay damages to Harris and to reinstate him to his former position, but the court set aside the award of punitive damages against the City and each of the individual defendants.

_____

[3] Because of his termination, a hearing on Harris' appeal of the recommended 24-hour suspension was not conducted.

7

The City, but not the individual defendants, appealed the district court's judgment to the United States Court of Appeals for the Fourth Circuit. Harris cross-appealed, assigning as error the district court's judgment to set aside the awards of punitive damages.[4] The court of appeals reversed, holding that Harris had no First Amendment right to seek the warrants against Van Auken since his "swearing out of the complaint did not implicate a subject of public concern." Harris v. City of Virginia Beach, Nos. 94-2091 and 94-2122, slip. op. at 14 (4th Cir. Oct. 30, 1995). The court then remanded Harris' state law claim to the district court to determine whether it should survive dismissal of the federal constitutional claim. Id. at 16.

On remand, the district court entered the same judgment that it had previously entered in favor of Harris on his state law claim. The court did so without conducting a new trial. Only the City appealed the district court's second judgment to the court of appeals, which again reversed and remanded the case with instructions to the district court to grant a new trial on the state law claim, or alternatively, to decline to exercise supplemental jurisdiction and dismiss the case without prejudice in light of the prior dismissal

_____

[4] Harris assigned other errors in his cross-appeal, but those issues are not relevant to this proceeding.

8

of the federal claim.  Harris v. City of Virginia Beach, No. 96-1743, slip op. at 8 (4th Cir. Mar. 31, 1997).  The district court dismissed the case without prejudice, and Harris then filed this action in the circuit court against the City, Van Auken, Beane, Baker, McCloud and Wall.

During pre-trial proceedings in the present case, Harris non-suited his claim against Van Auken.  The case then proceeded to a trial by jury against the remaining defendants.  At the close of all the evidence, the circuit court struck the City's evidence and found it liable, as a matter of law, for Harris' discharge.  The court reasoned that it is mandatory that police officers arrest people who violate the law, and that no one - including a police supervisor – may lawfully order a police officer to refrain from doing so.  Thus, the circuit court held that the order Harris disobeyed was an unlawful order, and that Harris' subsequent termination for violating that order contravened the public policies of the Commonwealth.

The court then submitted the case to the jury on the remaining issues.  Those issues were whether the individual defendants were also liable for Harris' termination in violation of Virginia's public policy, what amount of damages should be awarded against the City, and what damages should be assessed against the individual defendants if they

were found liable.  The jury returned a verdict finding all the individual defendants liable; awarding Harris compensatory damages from the City and the individual defendants, jointly and severally; and assessing punitive damages against the individual defendants.

In a letter opinion denying the defendants' post-trial motion to set aside the jury's verdict, the court again concluded, as it had at trial, that Harris' dismissal for securing the warrants against Van Auken violated the public policy of Virginia set forth in the Code sections specified by the magistrate as the basis for issuing those warrants. The court stated that

> [i]t is contrary to the public policy of Virginia to prohibit a police officer from doing his sworn duty as mandated by the Code of Virginia where the officer was justified in fact and in law in attempting to comply with these statutes which deal with the safety of the public.

The court also overruled the individual defendants' renewed plea of res judicata[5] and concluded that the jury's verdict was not excessive.

## ANALYSIS

Although the City and the individual defendants raise

_____

[5] The court had previously denied a pre-trial motion for summary judgment filed by all the individual defendants except Van Auken.  Relying on the doctrine of res judicata, they had asserted in that motion that the federal court's

several assignments of error, we conclude that two of them are dispositive of this appeal: (1) that the circuit court erred in finding that Harris' claim against the individual defendants is not barred by the doctrine of res judicata because of the federal court proceedings, and (2) that the court erred by finding that Code § 18.2-460 and former § 15.1-138 enunciate public policies that support Harris' wrongful discharge claim.  Accordingly, we will address only those two assignments of error.

First, we conclude that the circuit court erred in entering judgment against the individual defendants because the principle of res judicata bars relitigation of Harris' claim against them.  We have previously discussed the rationale for this judicially created doctrine, stating that it

> rests upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties. . . . The doctrine prevents "relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies."

Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254, 504 S.E.2d 854, 856 (1998) (quoting Bates v. Devers, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974)).  Because "the

---

judgment with regard to them barred relitigation of Harris' state law claim for wrongful discharge.

same parties" that were present in Harris' federal lawsuit are also present in this state court action, we conclude that the liability of those individual defendants, which was litigated in federal court, cannot now be relitigated in this subsequent action.[6]  See Faison v. Hudson, 243 Va. 413, 419, 417 S.E.2d 302, 304 (1992) (doctrine of res judicata rests upon principle that one person cannot relitigate with the same person a cause of action that was tried and finally determined upon the merits).

Harris pled, as a separate Count II of his federal complaint, a cause of action for wrongful discharge under Virginia law.  That count remained in the case throughout the preparation stages in the federal litigation, and was presented to the jury.  The federal district court's jury verdict form clearly indicates that the jury found that each individual defendant named in that case had unlawfully discharged Harris, or caused his discharge, in violation of Virginia's public policy.  Even though the district court set aside the jury's assessment of punitive damages, the court did not set aside the jury's finding of liability with regard to the individual defendants.  After the first appeal in which the court of appeals dismissed Harris' federal

_____

[6] Three other individuals, including Van Auken, were also held liable in federal court but are not parties in the

12

constitutional claim and remanded the state law claim, the district court specifically stated in its new order that the judgment in favor of Harris on his state law claim for wrongful discharge remained the same as the judgment previously entered by the court.  Since neither Harris nor the individual defendants noted an appeal from that order, the court of appeals did not have the individual defendants before it in the second appeal and therefore lacked jurisdiction over them.  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399-400 (1981).  Thus, the district court's order stands as a final judgment regarding the liability of the individual defendants for Harris' discharge and, under the doctrine of res judicata, bars relitigation of his claim against them in the present case.

Nevertheless, Harris contends that the federal district court never entered a final order with regard to the individual defendants because the court did not specifically state in either of its judgment orders whether the individual defendants were liable to Harris along with the City, or whether they were responsible for payment of the compensatory damages.  Although a final order is an essential element for the bar of res judicata to apply, Norris v. Mitchell, 255 Va. 235, 239-40, 495 S.E.2d 809, 812

_____

instant case.

13

(1998), we find no merit in Harris' contention for two reasons.

First, the district court stated in its initial judgment order that the jury had tried the issues and rendered its verdict. The court altered the jury's verdict only with regard to the award of punitive damages. In an order entered after the first appeal to the court of appeals, the district court stated that the judgment in favor of Harris on his state law wrongful discharge claim remained as previously entered by the district court. Thus, the district court never modified the jury's finding that the individual defendants unlawfully discharged, or caused the discharge of, Harris in violation of Virginia's public policy, but instead implicitly incorporated such finding in its final orders.

Second, there are only two ways by which the court of appeals could have acquired jurisdiction to review the judgment of the federal district court. The federal courts of appeal have jurisdiction of appeals from the final decisions of the district courts pursuant to 28 U.S.C. § 1291. The federal appellate courts can also exercise jurisdiction over interlocutory orders if there is an appeal

14

by permission pursuant to 28 U.S.C. § 1292(b).[7]  See Fed. R. App. P. 3(a)(4) and 5 (district court must enter order granting permission for interlocutory appeal under 28 U.S.C. § 1292(b) or stating that necessary conditions for such appeal are met).  There is no evidence of an order by the district court in accordance with § 1292(b) or Fed. R. App. P. 5(a)(3), nor other evidence that an appeal of an interlocutory order was permitted in Harris' federal lawsuit.  Because of that fact, we conclude that the court of appeals was necessarily reviewing a final judgment order from the district court in both appeals.  Otherwise, the parties would have been required to utilize the procedure specified in Fed. R. App. P. 5.  Thus, the district court's order was final as to all the parties, and that portion of it pertaining to the individual defendants was not affected by the court of appeals' decision in the second appeal because, as we have already stated, the individual defendants were not parties to that appeal.  Federated Dep't Stores, 452 U.S. at 399–400.

_____

[7] 28 U.S.C. § 1292(b) provides that a court of appeals, in its discretion, may permit an appeal from an interlocutory order if the district court states in writing that "an order not otherwise appealable under this section, . . . involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

15

Since relitigation of Harris' claims against the individual defendants is barred by the doctrine of res judicata, we are left only with the claim against the City. Before addressing the merits of the circuit court's judgment holding the City liable as a matter of law, we first must determine the basis for the court's ruling that the City's discharge of Harris violated certain public policies.

During a discussion between the court and the attorneys for the parties with regard to proposed jury instructions, the court stated that the evidence presented did not establish a "whistle blowing case." Instead, the court declared that the issue was whether it was a violation of the public policy of Virginia to attempt to prohibit Harris from obtaining the warrants against Van Auken and to fire him for doing so. It is in the context of this discussion that the court decided to strike the City's evidence and hold, as a matter of law, that the City's termination of Harris was unlawful because the discharge violated Virginia's public policy.

However, the circuit court later told the jury that the City had violated several of Virginia's public policies, including the policy "that a Virginia public employer, such as the City of Virginia Beach, shall not retaliate against a public employee because the employee has complied with any

16

law of the United States or the Commonwealth of Virginia or has reported any violation of such law to a governmental authority." Nevertheless, in the circuit court's post-trial letter opinion, which was incorporated in its final order, the court clearly did not rely on any public policy prohibiting retaliatory discharges in its decision to hold the City liable as a matter of law. The following excerpts from the court's letter opinion underscore its rationale.

> The Court held at trial and holds today that [Harris'] dismissal for obtaining those warrants was contrary to the public policy of Virginia as set forth in the sections of the code which were specified by the magistrate as the basis for the warrants and which are a matter of record in this case.[8]

> It is contrary to the public policy of Virginia to prohibit a police officer from doing his sworn duty as mandated by the Code of Virginia where the officer was justified in fact and in law in attempting to comply with these statutes which deal with the safety of the public.

Thus, we conclude that when the court struck the City's evidence and found it liable for Harris' discharge as a matter of law, the court relied only on the public policies underlying Code §§ 18.2-460 and -469, and former § 15.1-138.

Turning now to the merits of the circuit court's decision on this issue, we first observe that in our

---

[8] The Code sections specified in the warrants against Van Auken were §§ 18.2-460 (obstructing justice) and -469 (refusing or delaying the execution of process for a criminal).

17

previous cases dealing with Bowman-type exceptions to the employment-at-will doctrine, this Court has consistently characterized such exceptions as "narrow." Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98, 465 S.E.2d 806, 809 (1996); Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 104, 439 S.E.2d 328, 331 (1994); Bowman, 229 Va. at 540, 331 S.E.2d at 801. While all statutes of the Commonwealth reflect public policy to some extent, since otherwise they presumably would not have been enacted by our General Assembly, termination of an employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge.

A review of our prior cases involving this area of the law also reveals that this Court has found a public policy sufficient to allow a common law wrongful discharge claim to go forward as an exception to the employment-at-will doctrine in only two instances. The first instance involves laws containing explicit statements of public policy (e.g. "It is the public policy of the Commonwealth of Virginia [that] . . ."). Lockhart, 247 Va. at 105, 439 S.E.2d at 331. The second one involves laws that do not explicitly state a public policy, but instead are designed to protect the "property rights, personal freedoms, health, safety, or

welfare of the people in general." Miller v. SEVAMP, Inc.,
234 Va. 462, 468, 362 S.E.2d 915, 918 (1987). Such laws
must be in furtherance of "an [underlying] established
public policy" that the discharge from employment violates.
Bowman, 229 Va. at 539, 331 S.E.2d at 801. "Each of the
illustrative cases . . . cited in Bowman[, where we first
recognized the public policy exception to the employment-at-
will doctrine,] involved violations of public policies of
that character."[9]    Miller, 234 Va. at 468, 362 S.E.2d at
918. Even if a specific statute falls within one of these
categories, an employee must also be a member of the class
of individuals that the specific public policy is intended
to benefit in order to state a claim for wrongful
termination in violation of public policy. Dray v. New
Market Poultry Products, Inc., 258 Va. 187, 191, 518 S.E.2d
312, 313 (1999).

Applying these principles regarding the public policy
exception to the employment-at-will doctrine in the present
case, we conclude that the statutes relied upon by the
circuit court do not fit within either of the instances

_____

[9] In Mitchem v. Counts, 259 Va. ___, ___ S.E.2d ___
(2000), decided today, this Court holds that an at-will
employee asserted a valid common law cause of action for
wrongful termination of employment when she alleged that her
discharge violated the public policy underlying two criminal
statutes, Code §§ 18.2-344 and -345.

19

where we have found public policies that support a Bowman-type cause of action. Code § 18.2-460 defines the elements of, and sets forth the criminal penalties for, the crime of obstruction of justice, and, accordingly, reflects the General Assembly's intent to prohibit interference with the administration of justice. That section does not explicitly state any public policy, but, like all criminal statutes, it has as an underlying policy the protection of the public's safety and welfare. Miller, 234 Va. at 468, 362 S.E.2d at 918. However, Harris' reliance on the statute is not in accord with that policy. Instead, Harris is attempting to use Code § 18.2-460 as a shield to protect himself, not the public, from the consequences of his decision to charge Van Auken with obstruction of justice despite his supervisor's order to take no further action in an official capacity with regard to any aspect of the incident involving Grey and Gamble. To utilize this criminal statute as Harris suggests would allow wrongful discharge lawsuits to be pursued by virtually any police officer who believes that personnel decisions obstructed the officer's enforcement of the law. In light of our prior decisions addressing the public policy exception to the employment-at-will doctrine, we find no

established public policy underlying Code § 18.2-460 that would support Harris' wrongful discharge cause of action.[10]

A similar analysis applies to former Code § 15.1-138. That statute provided, in pertinent part, that a police officer "shall endeavor to prevent the commission . . . of offenses against the law of the Commonwealth . . . ; shall observe and enforce all such laws . . . ; [and] shall detect and arrest offenders . . . ."  By its terms, the statute did not state any public policy but merely described the powers and duties of a police force.  Nor was the statute designed to protect any public rights pertaining to "property . . . , personal freedoms, health, safety, or welfare."  Miller, 234 Va. at 468, 362 S.E.2d at 918.  See also Childress v. City of Richmond, 907 F.Supp. 934, 942 (E.D. Va. 1995), aff'd per curiam, 134 F.3d 1205 (4th Cir.) (en banc), cert. denied, 524 U.S. 927 (1998) (holding that statute did not create any public rights).  As we said in Lawrence Chrysler, 251 Va. at 98, 465 S.E.2d at 809, the Bowman exception is not broad enough to make actionable the discharge of an at-will employee that violates only private rights or interests.

_____
[10] The circuit court generally referenced the statutes cited in the warrants against Van Auken but did not actually name them.  However, its discussion of Virginia's public policy implicated both statutes.  Our analysis and conclusion that Code § 18.2-460 cannot be used as a source

21

For these reasons, we will reverse the judgment of the circuit court and enter final judgment here in favor of the City and the individual defendants.

Reversed and final judgment.

_____
of public policy to support Harris' wrongful discharge cause of action applies equally to Code § 18.2-469.