Present:  All the Justices

APRIL L. DRAY

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 981767                September 17, 1999

NEW MARKET POULTRY PRODUCTS, INC.

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Jr., Judge

This is another case in which an employee seeks to create an exception to the Commonwealth's established employment-at-will doctrine in order to pursue a common-law claim for wrongful discharge.

In August 1997, appellant April L. Dray, the employee, filed a motion for judgment against appellee New Market Poultry Products, Inc., the employer, seeking damages for alleged wrongful termination of her employment.  The employer filed a demurrer, which the trial court sustained in a May 1998 "Opinion and Order."  The employee appeals.

Because a demurrer, which tests the legal sufficiency of the motion for judgment, admits the correctness of all material facts that are properly pleaded, we shall recite the facts set forth in the motion for judgment as if they are true.

The employee worked for the employer from August 1994 until she was "fired" on September 11, 1996.  For about three months prior to her termination, the employee was a "quality control

inspector" on the employer's production lines to assure that no adulterated poultry products were distributed.

Two months prior to her termination, the employee "experienced difficulty" in getting other employees to follow proper sanitary rules.  "When management ignored and failed to correct the noted deficiencies," the employee, "in conformance to her training and assigned duties . . . , informed the plant's on-site governmental inspectors."  The inspectors "confirmed the unsanitary conditions," according to the allegations, and "forced" the employer to correct the deficiencies. Subsequently, the employee was told by her supervisor "that she would be fired if she ever again brought plant sanitary deficiencies to the attention of the . . . governmental inspectors."

In the week prior to the employee's termination, she and other quality control inspectors condemned as adulterated some poultry products based on improper work performed on the plant's "wash line."  On the day of the employee's termination, a government inspector required the employer to "reprocess a large quantity of poultry product due to contamination by metal-laced ice."

The employer's management believed that the employee had informed the government inspector of this adulterated product. She was discharged for violating the "edict" that she not inform

2

the inspectors of unsanitary conditions and adulterated poultry products. When the employee asked the reason for her discharge, the employer's personnel supervisor informed her that "'it was not working out.'"

In her motion for judgment, the employee says she "states a common law claim for wrongful termination of employment in violation of the public policy of the Commonwealth of Virginia." Elaborating, the employee asserts the public policy relied upon is articulated by the Commonwealth in the "Virginia Meat and Poultry Products Inspection Act," Code §§ 3.1-884.17 through -884.36 (the Act).

She alleges the employer terminated her in contravention of the public policy she finds set forth in the Act that is applicable to her. As a result, she asserts, she has incurred damages for which she seeks recovery.

In sustaining the demurrer, the trial court held that the motion for judgment did not set forth a legally cognizable claim for wrongful discharge. The court ruled that the plaintiff had failed "to extrapolate" from the broad declaration found in the Act, of an intent to serve "the public good" generally, a specific public policy intended to benefit the class of individuals to which the plaintiff belonged. Thus, the court decided, the employee's claim did not qualify as an exception to the employment-at-will doctrine. The trial court was correct.

Virginia adheres to the common-law doctrine of employment-at-will. When a contract calls for the rendition of services, but the period of the contract's intended duration cannot be determined from its provisions, either party ordinarily is at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate. Doss v. Jamco, Inc., 254 Va. 362, 366, 492 S.E.2d 441, 443 (1997); Stonega Coal and Coke Co. v. Louisville and Nashville R.R. Co., 106 Va. 223, 226, 55 S.E. 551, 552 (1906). But, "the rule is not absolute." Bowman v. State Bank of Keysville, 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985).

In Bowman, we recognized that a number of state courts had applied exceptions to the rule of terminability. By way of illustration, we referred to several decisions from other jurisdictions, e.g., Sheets v. Teddy's Frosted Foods, Inc., 427 A.2d 385 (Conn. 1980), that had granted such exceptions, but we did not adopt the rationale or exceptions articulated in those cases. Bowman, 229 Va. at 539-40, 331 S.E.2d at 801.

In Bowman, we applied "a narrow exception to the employment-at-will rule." Id. at 540, 331 S.E.2d at 801. We held that two bank employees, who were also stockholders of the bank corporation, had stated a cause of action in tort against the bank and bank directors when the employees were discharged after failing to heed a threat to vote their stock according to

4

the wishes of their employer.  We said that the public policy set forth in former Code § 13.1-32 (now § 13.1-662) conferred upon the plaintiffs as stockholders the right to vote their shares "free of duress and intimidation imposed on individual stockholders by corporate management."  Id., 331 S.E.2d at 801.

In the present case, the plaintiff seeks to mount a generalized, common-law "whistleblower" retaliatory discharge claim.  Such a claim has not been recognized as an exception to Virginia's employment-at-will doctrine, and we refuse to recognize it today.  See Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 465 S.E.2d 806 (1996) (motor vehicle repairman unsuccessfully sued employer alleging discharge for his refusal to use method of repair that he believed unsafe); Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915 (1987) (retaliatory discharge claim rejected when employee alleged she was fired for appearing as witness at co-employee's grievance hearing).

The Act upon which this plaintiff relies does not confer any rights or duties upon her or any other similarly situated employee of the defendant.  Instead, the Act's objective is "to provide for meat and poultry products inspection programs that will impose and enforce requirements with respect to intrastate operations and commerce."  Code § 3.1-884.19.

The plaintiff identifies two of the Act's provisions that she says articulate a public policy allowing her to evade the employment-at-will doctrine. She relies upon Code § 3.1-884.22, which forbids intrastate distribution of uninspected, adulterated, or misbranded meat and poultry products. She also relies upon Code § 3.1-884.25(2), which establishes criminal penalties for any person who "resists, . . . impedes, . . . or interferes" with state meat inspectors. These provisions do not secure any rights to this plaintiff, nor do any other provisions of the Act. Rather, the Act establishes a regulatory mechanism directed only to government inspectors and industry management.

In essence, the plaintiff claims she has been wrongfully terminated because she had a right to disregard management's requirements that she report to her company superiors, and not directly to government inspectors, when she believed she was acting to assure the safety of the employer's products. However, the Act affords plaintiff no express statutory right in this regard that is in specific furtherance of the state's public policy regarding inspections of meat and poultry products.

Consequently, we hold that the trial court did not err in sustaining the employer's demurrer. Thus, the judgment below will be

Affirmed.

6