**Wanda W. KING, Plaintiff,**

v.

**DONNKENNY, INC., Defendant.**

**No. Civ.A. 98–0058–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Feb. 1, 2000.

Mary Lynn Tate, Abingdon, VA, for plaintiff.

Stephen M. Hodges, Abingdon, VA, Harvey B. Cohen, Arlington, VA, Dennis J. Block, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, Senior District Judge.

### I. FACTS AND PROCEDURAL HISTORY

On April 2, 1998, the Plaintiff, Wanda King, filed suit in this court pursuant to 28 U.S.C. § 1332 (1994) alleging wrongful discharge, intentional infliction of emotional distress and negligent infliction of emotional distress. The Defendant, Donkenney, Inc., moved to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, basing its motion largely upon a release signed by the Plaintiff in May of 1996. The release stated that in exchange for a severance package, Ms. King would forego all causes and actions, including but not limited to, any claims related to her employment.[1] The Plaintiff responded that while she did sign the release, she signed under duress thereby rendering the release voidable at her election.

The court has previously considered the validity of the release. On July 28, 1999, the court dismissed this case due to Plaintiff's failure to plead the factual predicates necessary to support a claim of duress with the degree of specificity required by Fed.R.Civ.P. 9. In response, the Plaintiff amended her Complaint and the Defendant once again prays for dismissal and renews its assertion that the Amended Complaint, like its predecessor, lacks the specificity required under Rule 9.

---

1. The severance package consisted of eight and one-half week's pay and continued medical coverage for two months following the termination date. (Def.'s Mem.Supp.Mot. Dismiss Ex. A.)

For the purposes of this motion, the court will take all of the Plaintiff's factual allegations as true and resolve any resulting uncertainties in her favor. *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

This case arose from a series of events that transpired from December 3, 1994 through the remainder of the Plaintiff's employment, ending approximately May 3, 1996. Certain officers of the Defendant company participated in illegal accounting schemes designed to falsely inflate the company's stock prices. (Am.Compl.¶ 8.) When the Plaintiff, an accounting manager at the company, became aware of the illegal practices in 1994, she immediately brought the indiscretions to the attention of her supervisor.

When her supervisor refused to act, the Plaintiff contacted the company president and chief financial officer but was told, in essence, to ignore the practices and do whatever her supervisor required. From that time on, the Plaintiff's working environment at the company became a downward spiral of open hostility and abusiveness. As a result, her health soon began to decline.

Ultimately, the Plaintiff lost her job. On or about May 3, 1996, the Plaintiff's supervisor informed her that he was relieving her of her job responsibilities at the company and directed her to take two weeks leave with pay to ponder the demotion. When the Plaintiff did not receive her paychecks, she called to inquire about them and was told that she had resigned. When she rebutted this, her termination went into effect.

Following the Plaintiff's termination, the supervisor informed her that she would only receive her two weeks' back pay, severance pay and a letter of recommendation upon her signing the release in question. In addition to economic considerations, the Plaintiff alleges that she feared for her safety due to her knowledge of the company officials' criminal activity. She had discovered falsified sales figures amounting to twenty million dollars and knew that the inflated figures greatly benefitted her bosses. In fact, the release that she signed reflects the officers' concern about this knowledge as evidenced by the confidentiality clause contained therein.[2]

Thus lie the factual circumstances under which the Plaintiff signed the release, leaving the court with this question: Has the Plaintiff alleged sufficient and particular facts, in existence on or about the day of signing, to support her claim that those circumstances overcame her volition and free will?

## II. LAW AND DISCUSSION

■ Generally, duress is the application of undue pressure in a contractual bargaining process through the use of improper threats or physical force. Restatement (Second) of Contracts §§ 174–77 intro. note at 473 (1981); *cf. In re Maco Homes, Inc.,* Nos. 95–2938, 95–2939, 1996 WL 511494, at *4 (4th Cir. Sept.10, 1996). The Plaintiff avers two possible threats, both of which must be inferred from the circumstances. The first possibility is economic duress; conditioning the Plaintiff's receiving a job recommendation, severance pay and back wages solely upon her signing the release. The second implies that a physical threat may have induced her signing; arising from a totality of the circumstances surrounding the Plaintiff's knowledge of the Defendant's criminal activity. Either instance could render the release voidable.

■ Virginia recognizes a cause of action for economic duress, though such claims occur very infrequently. *Cf. generally Seward v. American Hardware Co.,* 161 Va. 610, 171 S.E. 650 (1933); *Cary v. Harris,* 120 Va. 252, 91 S.E. 166 (1917).

---

**2.** Under the release, the Plaintiff agreed not to disclose to any person, firm, or corporation any information that she received while employed with Donnkenney, Inc., including information concerning methods of conducting business, trading activities, or financial documents, among others. (Def.'s Mem.Supp. Mot. Dismiss Ex. A.)

The Restatement sheds some light here providing that where an employer threatens to prevent an employee's employment elsewhere, unless a release is signed, that employer has made an improper threat. § 176 cmt. f, illus. 12. It is true that the plaintiff has not alleged that such a threat was directly made, but threats may be expressed or implied. Given the subjective nature of inducement, the court cannot say as a matter of law that the defendant's refusal to provide a job recommendation, absent the release, did not rise to the level of a perceived threat to prevent the Plaintiff's future employment possibilities.

Unlike economic duress, the common law has always recognized that a threat of physical violence as a means to induce assent in the bargaining process is improper. *Cf.* Restatement § 175 cmt. a. Clearly, a court will not uphold a contract where the exchange consisted of "either sign or die." To be sure, the Plaintiff makes no allegations that the officers proffered such a profane, explicit assault. Nonetheless, she may have, under the circumstances, felt such an implication. Therefore, the court cannot say that there was no improper threat here either.

For duress to exist however, not only must a threat be improper, but it must leave the aggrieved party without any reasonable alternative other than to assent to the contract. This requirement cannot be met simply by claiming that the Defendant wrongfully withheld monies legally owed to the Plaintiff. For this, she had cognizable remedies: She could have sued for breach of contract or sought restitution, always reasonable alternatives to contracting under duress principles. However, courts cannot compel employers to write letters of recommendation. Similarly, if the Plaintiff felt physically threatened there would be little else she could do but sign.

Federal Rule of Civil Procedure 9 requires that the Plaintiff plead duress, a species of fraud, with particularity. *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 467 S.E.2d 778, 782 (1996). Of course there is no bright-line rule on how one

does so. Obviously, simply stating that one feared for their safety is not enough. However, where factual allegations bring forth possible motives for making an improper threat, such as the Plaintiff's knowledge of her employer's criminal activities, the claim of duress becomes much clearer.

■ Furthermore, determining whether duress is present, insofar as threats may be expressed or implied, and that the threat must induce assent to a contract, depends greatly upon the subjective state of mind of the plaintiff. So this determination involves difficult questions of both law and fact. Thus, the court cannot grant the Defendant's motion respecting this issue at this time.

The Defendant also moved to dismiss the Plaintiff's three substantive claims: wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress. This Motion is without merit, however, because under Fed.R.Civ.P. 12(b)(6) all that is required is a short, plain statement that the plaintiff is entitled to relief. *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 870 (4th Cir. 1941). There is no requirement for her to plead specific facts that, if true, are sufficient to prove the claim. The Plaintiff clearly satisfies this burden on the face of her complaint. Furthermore, there are specific issues under the wrongful termination claim that further undermine dismissal.

■ The examination of any wrongful discharge claim in Virginia begins with the employment-at-will doctrine, which is strictly construed. *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797, 798, 801 (1985). The Virginia Supreme Court has enunciated two narrow exceptions to employment-at-will in a triumvirate of case law. *See generally Dray v. New Market Poultry Prods.*, 258 Va. 187, 518 S.E.2d 312 (1999); *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98,

439 S.E.2d 328 (1994); *Bowman,* 331 S.E.2d at 801.

 Simply stated, the two exceptions to employment-at-will are that a plaintiff can maintain her suit where the termination results solely from her free exercise of a statutory right, *Bowman,* 331 S.E.2d at 801, or where a plaintiff belongs to a class of individuals protected by the public policy of a statute, and the termination, in and of itself, violates the policy or statute. *Lockhart,* 439 S.E.2d at 331. However, there is no exception for employees who are terminated for merely "blowing the whistle" on an employer for violating generalized regulatory mechanisms for business and industry. *Dray,* 518 S.E.2d at 313.

At first glance, it seems that the *Dray* decision might cast some doubt on the Plaintiff's ability to ultimately prevail. She was fired for dissenting from the criminal activities of her employer, but whether the statutes violated in this case were nothing more than regulatory schemes is not a determination for the court at this juncture. Furthermore, Virginia courts are becoming increasingly sympathetic toward plaintiffs who are fired for bringing an employer's criminal transgressions to light where the underlying public policy in outlawing the conduct dictates that citizens are entitled to live free from such activity.

Just recently the Virginia Supreme Court held that "laws that do not expressly state a public policy, but were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the general public, may support a wrongful discharge claim if they further an underlying, established public policy that is violated by the discharge from employment." *Mitchem v. Counts,* 259 Va. 179, 523 S.E.2d 246, 251 (2000) (citing *City of Virginia Beach v. Harris,* 259 Va. 220, 523 S.E.2d 239 (2000)); *Miller v. SEVAMP,* 234 Va. 462, 362 S.E.2d 915, 918 (1987). The Plaintiff cites the Virginia Code as containing a criminal statute that outlaws the activity engaged in by the Defendants, Va.Code Ann. § 13.1–502 (Michie 1999), and claims that her termination resulted from her refusal to participate in violating the law. Thus, even if there were a heightened pleading requirement for wrongful termination claims brought before this court, the Plaintiff would nonetheless survive this motion.

## III. CONCLUSION

For reasons set forth above, the Defendant's Motion to Dismiss is denied as to all claims of the Plaintiff.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.