UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE CENTECH GROUP, INCORPORATED,
          *Plaintiff-Appellant,*

          v.                                    No. 01-1898

GETRONICSWANG COMPANY, LLC,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-00-1555-A)

Argued: February 26, 2002

Decided: March 29, 2002

Before WIDENER and LUTTIG, Circuit Judges, and
Henry M. HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Grant G. Moy, Jr., Bethesda, Maryland, for Appellant. C. Allen Foster, GREENBERG TRAURIG, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Kenneth A. Martin, Jennifer C. Adams, MARTIN & ADAMS, P.L.L.C., Washington, D.C.; Daniel M. Press, Angela L. Hart, CHUNG & PRESS, McLean, Virginia, for Appellant. Kevin E. Stern, Geoffrey J. Greeves, GREENBERG TRAURIG, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant Centech entered into a contract with the Navy that required Centech to convert 55 million microfiche personnel records into digital form by June 30, 1997. Centech then awarded I-NET[1] a subcontract to design and develop a data conversion system.

Centech became delinquent in its performance of the prime contract with the Navy. On February 29, 1996, Centech and I-NET agreed to a memorandum of understanding ("Original MOU"), which stated, in part:

> I-NET agrees to assume liability for performance of the prime contract from CENTECH . . . *by either of the following methods*:
>
> > a.  Novation of the Contract from CENTECH to I-NET. . . .
> >
> > b.  Substantial Restructuring of the Subcontract Agreement to Allow I-NET to Perform the Majority of the Remaining Work in Compliance with Applicable Government Regulations. . . .
> >
> > c.  If a. or b. above are not possible, the parties *agree to work in good faith to* restructure the current prime/subcontract arrangement to achieve essentially the same objectives with the Government's approval.

---

[1]Appellee Getronicswang is the successor in interest to I-NET.

J.A. 38 (emphasis added). I-NET also agreed, in the original MOU, to award $9.25 million in subcontracts to Centech over a three-year period, and to provide Centech with $20 million in bid/teaming opportunities over a two-year period. J.A. 38-39.

The parties were unable to agree to a novation or a substantial restructuring. On May 31, 1996, they entered into a new "memorandum of understanding" ("Revised MOU"), which expressly stated that it "*supercedes all other previous agreements* between [Centech] and [I-NET] made pursuant to the [Navy] contract." J.A. 182 (emphasis added). It also provided that I-NET

> *agrees to assume* full liability for the timely, and satisfactory performance and delivery of the services described in the prime contract and to indemnify Centech Group against all contractual claims and losses arising from any failure to perform such services in a timely or satisfactory manner.

J.A. 182 (emphasis added). The Revised MOU further stated that the parties have agreed with the Navy that the Navy/Centech prime contract would be terminated and I-NET would enter into a new contract with the Navy. J.A. 182. Under the Revised MOU, I-NET agreed to "use commercially reasonable efforts to identify and pursue bid/teaming opportunities offering projected total contract revenue of $10 million to Centech Group." J.A. 183.

Centech now sues I-NET, claiming that I-NET breached the Original MOU and the Revised MOU by failing to provide Centech with the required teaming and bidding opportunities. The district court granted summary judgment for I-NET on Centech's claim under the Original MOU, because the Original MOU had been abrogated by the Revised MOU, which stated that "[t]his agreement . . . supercedes any and all other agreements between [Centech] and [I-NET]."). The district court rejected Centech's claim that Revised MOU was not a valid contract. Centech appeals.

## I.

Centech argues that the Revised MOU was not supported by consideration, claiming that each promise made to Centech by I-NET in

the Revised MOU had already been made in the Original MOU. However, we agree with the district court that the Revised MOU was supported by consideration. In the Revised MOU, I-NET agreed to assume the prime contract by entering into a new contract with the Navy, unlike the Original MOU, which said the parties would merely "work in good faith" to restructure their contracts if they were unable to agree on a novation or substantial restructuring of their subcontract. Under the Revised MOU, I-NET *definitely* assumed Centech's responsibilities under the prime contract. The Original MOU, on the other hand, was *conditional* — I-NET would only assume Centech's responsibilities if the parties could agree to a novation, a substantial restructuring of their subcontract, or successfully work in good faith to restructure the contractual arrangements. J.A. 221-25.

Centech nevertheless argues that the Original MOU was not conditional, because it "states flatly that 'I-NET agrees to assume liability for performance of the prime contract,' and *then* goes on to describe how that will be accomplished." Reply Br. at 7 (emphasis in original). That is not a fair reading of the Original MOU, under which I-NET agreed to assume liability for the prime contract "*by either of the following methods.*" J.A. 38 (emphasis added). The Original MOU was not a definite promise by I-NET to assume the prime contract, with sections a., b., and c. merely "describing" how that will be done. Rather, I-NET only agreed to assume Centech's responsibilities under the prime contract by one of the methods listed in a., b., or c. The district court was correct to find consideration in the Revised MOU, in which I-NET flatly assumed Centech's responsibilities under the prime contract with no strings attached.[2]

## II.

Centech further asserts that the Revised MOU is invalid because it was procured by duress. Centech claims that I-NET "threatened" to discontinue its performance under its subcontract with Centech,

---

[2]We find no ambiguity on the face of either the Original MOU or the Revised MOU. It is obvious on the face of the Original MOU that I-NET would only assume Centech's responsibilities under the prime contract if certain conditions were met. Accordingly, we do not consider Centech's parol evidence.

which induced Centech to sign the Revised MOU. I-NET's alleged "threat" hardly constitutes the coercive circumstances necessary for a claim of economic duress. For duress to exist under Virginia law, "not only must a threat be improper, but it must leave the aggrieved party *without any reasonable alternative other than to assent to the contract.*" *King* v. *Donnkenny, Inc.*, 84 F. Supp. 2d 736, 739 (W.D. Va. 2000) (emphasis added). Centech had many "reasonable alternatives" other than to sign the Revised MOU in response to I-NET's alleged threat. It could have filed a declaratory judgment or an anticipatory lawsuit against I-NET, or it could have sought to renegotiate its prime contract with the Navy, to name just a few.

The record shows that the Revised MOU was the result of arms-length discussions between sophisticated corporate parties, and Centech even consulted with its in-house counsel, Grant Moy, before signing the Revised MOU. We find Centech's claim of duress to be without merit.

## CONCLUSION

For these reasons, the judgment of the district court is affirmed.

*AFFIRMED*