# CIRCUIT COURT OF THE CITY OF NORFOLK

Douglas Nicoll
and Tammy Nicoll

v.

City of Norfolk
Wetlands Board

April 10, 2015

Case No. (Civil) CL14-4046

BY JUDGE DAVID W. LANNETTI

Today the Court rules on the Demurrer and Motion for Summary Judgment filed by Defendant City of Norfolk Wetlands Board (the "Board"). The Court sustains the Board's Demurrer because Count II of the Amended Complaint filed by Plaintiffs Douglas and Tammy Nicoll does not sufficiently state a claim for a court declaration determining wetlands boundaries and riparian rights on the Nicolls' property. The Court denies the Board's Motion for Summary Judgment because, although mowing vegetated wetlands and disposing of the cuttings as waste is not an activity exempt from the permitting requirement of the Norfolk Wetlands Ordinance, the Court does not have before it the necessary undisputed material facts to grant summary judgment at this time.

*Background*

Section 28.2-1300 *et seq.* of the Code of Virginia authorizes the existence of local wetlands boards as well as the adoption and administration of a local wetlands zoning ordinance. Va. Code § 28.2-1300 *et seq.* (1950). The City of Norfolk, pursuant to the authority granted by § 8.01-386 of the Code of Virginia and Rule 2:202 of the Rules of Supreme Court of Virginia, enacted such a wetlands ordinance. The language in local wetlands ordinances must exactly match that expressed in the Code of Virginia. Va. Code Ann. § 28.2-1302 (1950). Section 49-3 of the City of Norfolk Wetlands Code (the "Wetlands Ordinance") lists certain enumerated activities ("exemptions") that are authorized in designated wetlands without a permit if otherwise permitted by law. Norfolk City Code § 49.3. The exemptions include, *inter alia*, "[g]razing, haying, and cultivating and harvesting agricultural, forestry, or horticultural products." *Id.* § 49.3(5). Section 49-6 of the Wetlands Ordinance directs that "[a]ny person who desires to use or develop any vegetated wetland and any nonvegetated wetland, within this city, other than for those activities specified in § 49-3 above, shall first file an application for a permit directly with the wetlands board." *Id.* § 49.6(a). Section 28.2-1302 of the Code of Virginia contemplates permit applications going either to the local wetlands board or to the Virginia Marine Resources Commission. *Id.* Once a local wetlands zoning ordinance is enacted, however, permit applications for that locality go only to the Board. Norfolk City Code § 49-6. The Wetlands Ordinance provides that the Board shall grant a permit if, *inter alia*, "[t]he anticipated public and private benefit of the proposed activity exceeds its anticipated public and private detriment." *Id.* § 49.11(b)(1). The Code of Virginia provides that it is "unlawful for any person to conduct any activity which would require a permit under a wetlands zoning ordinance without such a permit." Va. Code § 28.2-1306(A).

The Court, having reviewed the pleadings and the transcript from the March 3, 2015, hearing, finds the following facts to be undisputed. The Nicolls' property is located at 9506 15th Bay Street, Norfolk, Virginia (the "Property"). (Am. Compl. 1; Dem. 1; Mot. for Summ. J. 1.) A portion of the Property includes vegetated wetlands as defined in § 28.2-1300 of the Code of Virginia. (*Id.*) The same definition of "Vegetated Wetlands" is included in the Wetlands Ordinance. Norfolk City Code § 49-2. The Nicolls have routinely "mowed" the Property, including areas with vegetated wetlands, for many years. (Am. Compl. 2; Dem. 1; Mot. for Summ. J. 2.) The Board recently instructed the Nicolls to cease mowing the vegetated wetlands without a permit. (Am. Compl. 4; Dem. 2; Mot. for Summ. J. 2.)

The Nicolls filed suit against the Board seeking a declaratory judgment after the Board required them to obtain a permit in order to continue mowing the wetlands on the Property. (Am. Compl. 1-3.) In their Amended Complaint, the Nicolls include two counts. Count I requests a declaration that a permit is not required to mow vegetated wetlands, and Count II

seeks a judicial determination of the wetlands boundary lines and riparian rights on the Property. (*Id*. at 4-5.) In their prayer for relief, the Nicolls request that the Court issue a declaratory judgment that: (i) determines that mowing of vegetated wetlands on the Property does not require a permit; (ii) holds that the Board's order instructing the Nicolls to cease mowing their vegetated wetlands is void; (iii) enjoins the Board from enforcing the Wetlands Ordinance inconsistent with the Virginia Marine Resources Commission (the "VMRC"); (iv) establishes the boundary of the Property using the mean low water line; (v) establishes a mean tidal range for the purpose of determining the jurisdiction of the Board over the Property; and (vi) grants the Nicolls any such other relief as justice may require. (Am. Compl. 7.)

The Board demurred to the Amended Complaint and filed a Motion for Summary Judgment. After briefing and related oral argument on March 3, 2015, this Opinion addresses the Board's Demurrer and Motion for Summary Judgment.

## Positions of the Parties

The Court received the Board's Demurrer and Motion for Summary Judgment (with accompanying Brief in Support), the Nicolls' Response in Opposition to the Motion for Summary Judgment, and the Board's Reply Brief to the Nicolls' Response in Opposition. The Court did not receive any briefs related to the Demurrer. The parties argued their positions regarding both the Demurrer and the Motion for Summary Judgment at the March 3, 2015, hearing.

### A. *The Board's Demurrer*

The Board demurred to Count II of the Amended Complaint, regarding a judicial determination of wetlands boundary lines and riparian rights. (Dem. 1.) Specifically, the Board argues that the Nicolls failed to: (i) allege that jurisdiction of the Board would be different using the most recent mean low water and tidal range data at the Property location; (ii) allege that the wetlands being mowed are located outside the jurisdictional limits; (iii) present anything to "indicate or suggest" that Count II presents a case or controversy; and (iv) request appropriate relief because boundaries are determined by statute and not judicial intervention. (Dem. 2-3.)

### B. *The Board's Motion for Summary Judgment and Brief in Support*

The Motion for Summary Judgment requests relief only as to Count I of the Amended Complaint, regarding a declaration that a permit is not required to mow vegetated wetlands. (Mot. for Summ. J. 4.)

The Board contends that, because the Nicolls concede that they "are mowing vegetated wetlands," the dispute turns on the legal issue of

"whether there is an exemption to allow that activity to occur without the need to apply for a permit beforehand." (Tr. 38-39.) The Board essentially claims that there are no material facts in dispute and that the Court, therefore, can rule on the legal matter of whether mowing is an exempt activity under the Wetlands Ordinance. To address this legal question, the Board's Motion for Summary Judgment focuses on two issues. First, the motion attacks the Nicolls' contention that mowing vegetated wetlands is within the exemption enumerated in § 49-3(5) of the Wetlands Ordinance. (Br. in Supp. 3.) The Board argues that the plain meaning of the statute does not exempt "mowing" (*Id.* at 3-10); stated differently, the Board alleges that, because "mowing" is not one of the approved agricultural activities, it is not exempt from the permit requirement. Second, the Board alleges that the Nicolls' arguments challenging the Board's interpretation of the legal question are baseless. (*Id.* at 10-16.) The Board asserts that: (i) the opinion of the VMRC regarding the question of law presented in this case is irrelevant; (ii) estoppel is no defense to enforcement; (iii) Dillon's Rule has no application in this case; and (iv) the Board has explicit authority to order the Nicolls to cease mowing vegetated wetlands. (*Id.*)

C. *The Nicolls' Response in Opposition to Summary Judgment*

The Nicolls contend that a plain reading of the Wetlands Ordinance supports that mowing is exempt from the permitting requirement. (Br. in Opp. 1-6.) In support of their position, they argue that: (i) the use of the Property either for recreational purposes or to cut salt meadow hay is exempt from the permit requirements of the Wetlands Ordinance; (ii) the longstanding interpretation of § 28.2-1302 of the Code of Virginia by the VMRC and the Wetlands Board, that mowing wetlands does not require a permit, should be accorded great deference; (iii) the Board exceeded the scope of its powers under § 28.2-1302 of the Code of Virginia by requiring the Nicolls to obtain a permit, thereby violating Dillon's Rule; and (iv) the Board does not have authority to issue or enforce a restoration order. (*Id.* at 2-12.)

D. *The Board's Reply to the Nicolls' Response in Opposition to Summary Judgment*

In reply to the Nicolls' Response in Opposition to Summary Judgment, the Board reiterates that: (i) mowing vegetated wetlands is not exempt from the permit requirement; (ii) interpretations of the haying exemption expressed by any entity other than a court enjoy no deference; (iii) Dillon's Rule does not preclude the Wetlands Board from requiring a permit for routine mowing of vegetated wetlands; and (iv) the Board has authority to issue wetlands-related orders. (Reply Br. 1-15.)

*Analysis*

*Legal Standard*

A demurrer tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). The only question for the court to decide is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). On demurrer, the court must admit the truth of all material facts properly pleaded, facts that are impliedly alleged, and facts that may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Even if imperfect, a complaint drafted such that a defendant cannot mistake the true nature of the claim should withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). The court will not consider any factual assertions outside the pleadings for purposes of a demurrer. *See* Va. Code Ann. § 8.01-273 (1950). If a court sustains a demurrer, it is within the court's discretion to allow leave to amend the Complaint, and such leave "shall be liberally granted in furtherance of the ends of justice." Va. Sup. Ct. R. 1:8.

Summary judgment allows the court to end litigation when it is clear, based upon the pleadings and admissions of the parties, that one of the parties is entitled to judgment. *Carson v. LeBlanc*, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993). In ruling on a motion for summary judgment, the court can consider all pleadings, pretrial orders, admissions, interrogatories, and documents produced. *Leslie v. Nitz*, 212 Va. 480 (1971); Va. Sup. Ct. R. 3:20. A court shall not enter summary judgment if any material fact is genuinely in dispute. Va. Sup. Ct. R. 3:20. Summary judgment "is applicable only to these cases where no trial is necessary because no amount of evidence could affect the result." *General Accident Fire & Life Assurance Corp. v. Cohen*, 203 Va. 810, 814, 127 S.E.2d 399, 402 (1962).

*Discussion*

The Court has considered the Board's Demurrer to the Amended Complaint and Motion for Summary Judgment, related briefs, oral argument at the March 3, 2015, hearing, and applicable authorities.

A. *Demurrer*

As discussed *supra*, it is undisputed that: vegetated wetlands are on the Property; the Nicolls have routinely "mowed" the Property grounds,

including areas with vegetated wetlands; and the Board recently instructed the Nicolls to cease mowing the vegetated wetlands on the Property without a permit.

The Nicolls seek relief in Count II via a declaratory judgment "establishing the boundaries of the [P]roperty using the current mean low water line, [and] establishing the mean tide range for purposes of determining the jurisdictional extent of the Norfolk Wetlands Board over the property." (Am. Compl. 7.) Among other things, the Nicolls allege that the data used by the Board to calculate the wetlands boundaries on the Property are inaccurate. (Am. Compl. 39.)

In response, the Board states that "those boundaries are established by statute, not judicial intervention." (Dem. at 3.) The Board points out that, although the Nicolls claim that the wetlands data are inaccurate, they do not allege that the boundaries used by the Board are incorrect. (Tr. 5-7.) The Board also notes that the Nicolls do not allege that the jurisdictional limits would be different if the boundaries were calculated based on updated data. The Board stresses that, because the Nicolls do not allege that the boundaries are incorrect or that they would be different if recalculated, there is no controversy for the Court to resolve. (*Id.*)

The Court concurs that, based on the information provided in the Amended Complaint, the Nicolls have not presented a justiciable controversy. Although the Nicolls cite to cases purporting to authorize a judicial determination of riparian rights (Am. Compl. ¶ 40), their reliance is misplaced. The cited cases discuss judicial determinations of riparian rights in the context of disputes between private parties or among adjacent property owners.

The two cases the Nicolls cite in their Amended Complaint are *Carr v. Kidd*, 261 Va. 81, 540 S.E.2d 884 (2001), and *Swanenburg v. Bland*, 240 Va. 408, 397 S.E.2d 859 (1990). The *Carr* court held that a historic mean water line, which is unaltered by man, is the proper measurement in the apportionment of riparian rights, and a riparian owner will gain the right to water frontage unless the grantor of the interest clearly retains such right for himself or another on the face of the granting deed. *Carr*, 261 Va. at 95, 540 S.E.2d at 892-93. The *Swanenburg* court held that only when evidence regarding the location of property lines has factual support, which is uncontradicted and unimpeached and is neither inherently incredible nor inconsistent with probative evidence in the record, does the issue become a matter of law for a court's determination. *Swanenburg*, 240 Va. at 422, 397 S.E.2d at 862. Neither case authorizes a judicial determination of riparian rights under facts analogous to the ones before the Court.

They do not contemplate a situation, such as the one before the Court, involving a dispute between a private landowner and a governmental entity. The Court therefore does not find these cases persuasive with respect to

judicial authority to establish wetlands boundary lines and/or establish riparian rights.

The Court finds guidance in § 49-2 of the Wetlands Ordinance, which sets forth how wetlands boundary lines are determined. Norfolk City Code § 49-2. The definitions of wetlands expressly provide that the boundary lines are derived mathematically from mean low water and mean tidal range for a given location. *Id.* The Court is not aware of any Virginia cases in which the calculation of wetlands boundaries, established pursuant to § 28.2-1300 of the Code of Virginia or an equivalent local wetlands ordinance section such as § 49-2 of the Norfolk City Code, was the subject of a dispute. Further, although the Nicolls assert that "the mean low water mark and tidal range used by the Norfolk Wetlands Board is inaccurate" (Am. Compl. ¶ 39), they do not identify the nature of the alleged inaccuracies or contend that the wetlands boundary lines ultimately relied upon by the Board are incorrect. Of note, the Board apparently offered to provide a wetlands delineation for the Property (Am. Compl. Ex. C); the results of that delineation, assuming that the Nicolls availed themselves of the opportunity to have it performed, are not mentioned in the Amended Complaint. Simply put, the Nicolls have not sufficiently pleaded a controversy regarding the location of the wetlands boundaries on the Property and the concomitant riparian rights. The Court sustains the Demurrer as to Count II of the Amended Complaint regarding the Nicolls' request for judicial establishment of wetland boundaries and riparian rights on the Property.

## B. *Motion for Summary Judgment*

### 1. *Whether the Applicable Wetlands Ordinance Exemption Requires an Agricultural or Commercial Benefit*

The Nicolls and the Board have a fundamental disagreement regarding the plain meaning of the permit exemptions provided in the Wetlands Ordinance.

The relevant exemption at issue is the one for "[g]razing, haying, and cultivating and harvesting agricultural, forestry or horticultural products." Norfolk City Code § 49.3(5). The Board asserts that the exemption sub-parts of (1) grazing, (2) haying, and (3) cultivating and harvesting all are modified by the words "agricultural, forestry, or horticultural products," and that each sub-part, therefore, must "expressly relate[] to the pursuit of some agricultural [or commercial] purpose." (Br. in Supp. 3-6.) The Nicolls, by contrast, contend that the modifier applies only to the third prong. (Br. in Opp. 2-4.) The Court finds the Nicolls' interpretation of the statute persuasive.

When engaging in statutory interpretation, a court should apply the plain meaning of the statute unless the terms are ambiguous. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007);

*see also Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384, 757 S.E.2d 1, 8 (2014) (stating that, when a statute's terms are undefined, they are given their ordinary meaning in light of the context in which they are used). If terms are ambiguous, the court should apply the interpretation that will carry out the legislative intent behind the statute. *Garrison v. First Fed. Savings & Loan Ass'n*, 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991).

A plain reading of the permit exemption language makes it clear that "agricultural, forestry, or horticultural products" modifies only "cultivating and harvesting." It simply would not make sense, for example, to graze or hay a forestry product. The Court, therefore, concludes that grazing and haying may involve products other than agricultural, forestry, or horticultural products. In support of this interpretation, the Court notes that a prior version of the statutory model wetlands ordinance lists the analogous exemption as "[t]he cultivation of agricultural or horticultural products; grazing and haying," making it clear that grazing and haying have no modifying language. Va. Code Ann. § 62.1-13.5 (1950 & Supp. 1972). The Court is not aware of any intended alteration of meaning based on the rephrasing.

For these reasons, the Court holds that grazing and haying are not required to involve agricultural, forestry, or horticultural products to be exempt from permitting under the Wetlands Ordinance.

## 2. *Whether the Wetlands Ordinance Includes Mowing Vegetated Wetlands as an Exempt Activity*

The Nicolls assert that mowing vegetated wetlands is an exempt activity and, therefore, does not require a permit, because mowing both is the equivalent of haying and is subsumed in exempt "[o]ther outdoor recreational activities."

The Court must view the exemptions, as well as the permitting criteria, in the context of the statute as a whole. The Virginia statutory scheme governing wetlands recognizes that wetlands: are essential to marine and inland wildlife; serve as a vital protective barrier for the Commonwealth's shores and soils; absorb silt and pollutants; and are important for recreational and aesthetic enjoyment. Va. Code § 28.2-1301(D). The overriding goal of this statutory scheme appears to be to "preserve and prevent the despoliation and destruction of wetlands while accommodating necessary economic development in a manner consistent with wetlands preservation." *Id.* § 28.2-1301(B). Consistent with this goal, the policy of the Wetlands Ordinance is to "preserve and prevent the despoliation and destruction of wetlands within [Norfolk] while accommodating necessary economic development in a manner consistent with wetlands preservation." Norfolk City Code § 49-5.1. It, therefore, is reasonable to infer that the activities exempt from the permitting requirement are designed to support the statutory goal and code policy. Further, this philosophy is incorporated expressly into the

permitting provisions for non-exempt activities; the Board is required to verify, *inter alia*, that "[t]he anticipated public and private benefit of the proposed activity exceeds its anticipated public and private detriment" in order to grant a permit. *Id.* § 49-11(b)(1). Prior to a city, county, or town adopting a wetlands ordinance, the VMRC reviews permit applications and applies the same approval criteria. *See* Va. Code § 28.2-1306(C).

The Court's determination that grazing and haying need not involve agricultural, forestry, or horticultural products does not resolve the issue of whether mowing is an exempt activity under the Wetlands Ordinance, because mowing still might not be exempt despite being part of haying or another enumerated exception. The Court need not — and does not — discuss whether "mowing" might qualify as the equivalent of "grazing" because the Nicolls do not raise that argument. As an initial matter, the plain language of the Wetlands Ordinance is clear; there is no express language identifying mowing as an exempt activity. *See* Norfolk City Code § 49-3. In fact, there is no mention of mowing at all. The issue then is whether mowing falls into one of the enumerated exemptions in § 49-3 of the Wetlands Ordinance. Specifically, the Court will address the two arguments raised by the Nicolls: (i) whether mowing, by itself, is the equivalent of haying; and (ii) whether mowing is exempt as an "other" outdoor recreational activity.

### a. *Mowing, by Itself, Is Not the Equivalent of Haying*

The Nicolls first contend that "mowing" is the equivalent of "haying," and they contend that "haying" can be defined as "cutting saltmeadow hay in a tidal wetland," thereby implying that their mowing on the Property is haying and, therefore, is exempt from permitting. (Br. in Opp. 3.)

According to the Board-provided dictionary definitions, which the Court finds to be reasonable: "mow" includes "to cut down, as grass, with a scythe or machine"; "haying" includes "[t]he process or season of harvesting hay"; "hay" includes "[g]rass mowed or ready for mowing; esp. grass cut and cured for fodder"; and "harvest" includes "to reap or gather, as any crop, material, or result." (Br. in Supp. 5.) The listed definitions are from the Second Unabridged Edition of *Webster's New International Dictionary* (1954). Based on these definitions, haying is comprised of *both* cutting down hay (which can be grass) *and* gathering the cut hay, ostensibly for some productive purpose, such as for fodder.

This interpretation of haying is consistent with the Wetlands Ordinance policy to "preserve and prevent the despoliation and destruction of wetlands within [Norfolk] while accommodating necessary economic development in a manner consistent with wetlands preservation." The final disposition of the cut grass in the haying process — for some productive purpose, such as for fodder — supports economic development, a benefit that *outweighs* the detriment of some despoliation and destruction of the wetlands. Mowing that results in *disposal* of the cut grass as waste maintains the detriment

but eliminates any corresponding benefit, making mowing with disposal of the cut grass inconsistent with the Wetland Ordinance policy. The Court therefore holds that mowing *with disposal of the cut grass* is not an exempt activity under § 49-3(5) of the Wetlands Ordinance. The Court's determination that mowing, by itself, is not an exempt activity does not affect the Board's authority to issue permits for mowing as a non-exempt activity. *See* Norfolk City Code § 49-6.

The Nicolls assert in their Amended Complaint that, for over twenty years, the VMRC "has interpreted the Virginia Code to allow for routine mowing of wetlands grasses, provided the underlying soil surface is not disturbed." (Am. Compl. 2.) They contend that the VMRC's interpretation is controlling and binding upon the Board. (Br. in Opp. 6-8.) The Nicolls cite several cases for the proposition that "where a governmental unit or agency has maintained a long standing regulatory interpretation, there is a strong inference that such interpretation is to be followed and/or given great deference." (*Id.* at 7 (citing cases).) Here, however, it is not a matter of the Board being guided by agency regulations. Under the statutory scheme created by the Virginia legislature, *either* the VMRC or the local wetlands board controls permitted wetlands activities in a given jurisdiction. Because Norfolk has a local wetlands board, the VMRC's interpretations regarding the approval of permits are not binding on the Board. More significantly, the VMRC's interpretations are not even persuasive, as a legal interpretation of a statute or of the Norfolk City Code is the province of the Court and is not a proper function of the VMRC or the Board. *See, e.g., Virginia Dep't of Health v. NRV Real Estate, L.L.C.*, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009) ("Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review.").

The Nicolls allege only that they "have been routinely mowing their Property, including the Vegetated Wetlands." (Am. Compl. 2.) If the Nicolls used the cut grass as part of haying, *i.e.*, gathered the cut grass for some productive purpose, the mowing arguably falls within the haying exemption. If, on the other hand, the Nicolls merely disposed of the cut grass, such that the cut grass served no productive purpose, the mowing would not fall within the haying exemption. The disposition of the grass after mowing is a necessary material fact not currently before the Court. Because the disposition of the cut grass from the vegetated wetlands on the Property has not been established, the issue is not ripe for resolution as a matter of law.

b. *Mowing Is Not an "Other Outdoor Recreational Activity"*

The Nicolls alternatively argue that mowing vegetated wetlands on the Property is an exempt activity because mowing is included in "[o]ther

outdoor recreational activities, provided they do not impair the natural functions or alter the natural contour of the wetlands," as provided in § 49-3(4) of the Wetlands Ordinance. (Br. in Opp. 4-5.) As an initial matter, the Court does not believe that mowing is the sort of "recreation" envisioned by the legislature when it drafted the statutory language. The Court concurs with the Board that " 'mowing' does not contemplate anything an ordinary person would describe as recreational" (Reply Br. 8), just as the Court would find unpersuasive Tom Sawyer's entreaty that whitewashing a picket fence was recreation and not work.

Further, pursuant to the plain language of the Wetlands Ordinance, these "other" outdoor recreational activities are in addition to those listed in § 49-3(3), i.e., "[n]oncommercial outdoor recreational activities, including hiking, boating, trapping, hunting, fishing, shellfishing, horseback riding, swimming, skeet and trap shooting, and shooting on shooting preserves." Norfolk City Code § 49-3(3). Significantly, the § 49-3(3) enumerated recreational activities do not despoil or destroy the vegetation growing on the wetlands; they merely take place on the wetlands and, at best, have an incidental effect on the wetlands vegetation. It, therefore, is reasonable to infer that the "other" recreational activities exempted by § 49-3(4) similarly must not damage the vegetation. The Court does not, however, go so far as to say that the "other" outdoor recreational activities must be commercial, as opposed to noncommercial, activities, as the Board argues. (Reply Br. 8.) Mowing, by cutting the vegetation, arguably constitutes despoliation or destruction of the wetlands. Even if that were not the case, arguendo, mowing the vegetation might "impair the natural functions or alter the natural contour of the wetlands." The Nicolls assert that the Board "concedes that the Nicolls' activity does not impair the natural functions or alter the natural contour of the wetlands" (Br. in Opp. 6-7), although it cites nothing to support this assertion, and the Court is not aware of anything presented in this regard. Indeed, the Board also is unaware of such a concession. (See Reply Br. 9.) For instance, a lower vegetation height conceivably could affect erosion of the wetlands, either directly via less wind resistance and rainwater flow or indirectly via the development over time of shallower or less dense root systems. The specific damage to the wetlands very well might depend on, inter alia, the mowing mechanism, the height of the vegetation before and after the mowing, or how far into the wetlands and toward the water the mowing occurred. Although it is unlikely that a standard mowing machine, e.g., a lightweight push mower, would alter the contour of the wetlands, it is conceivable — depending on, inter alia, the actual mowing mechanism, the firmness of the wetlands being mowed, and perhaps the initial height of the vegetation and its interaction with the mowing machine — that the natural contour of the wetlands could be altered. Stated differently, even if mowing were a recreational activity, which it is not, whether mowing the wetlands on the Property impairs the

natural functions or alters the natural contour of the wetlands is a factual issue that is inappropriate to resolve at this juncture.

The Court also finds the Nicolls' argument that mowing could fall within the "other outdoor recreational" exemption because it "maintain[s] a yard for recreational use of the property" (Br. in Opp. 5) inconsistent with a plain reading of the Wetlands Ordinance.

### 3. *Whether the Board Violated Dillon's Rule*

The Nicolls assert that the Wetlands Board's permit requirement for non-exempt activities is "beyond the delegation of authority set forth in the Virginia Code and, therefore, violates Dillon's Rule as applied in Virginia." (Am. Compl. ¶ 16.) The governing statute outlines the wetlands ordinance that cities, counties, and towns *must* adopt and that "shall serve as the only wetlands zoning ordinance under which any wetlands board is authorized to operate." Va. Code § 28.2-1302. That model ordinance provides guidance for local wetlands boards to issue permits for non-exempt activities, *id.*, and the Board has adopted the model ordinance in Norfolk. Norfolk City Code §§ 49-3, 49-6, 49-11, 49-12. Under this statutory structure, the Board clearly has the power to oversee the application and approval (or disapproval) of permits for non-exempt activities.

The Nicolls also allege that the Board is not authorized to issue "cease and desist" orders. (Am. Compl. ¶¶ 20, 21.) It would be nonsensical to empower the Board to control issuance of permits for non-exempt activities and simultaneously preclude it from requiring citizens to refrain from non-exempt activities if they fail to obtain such permits. Indeed, the Board has express statutory authority to investigate and enforce the wetlands permitting requirement. *See* Va. Code §§ 28.2-1316, 28.2-1317. The Court, therefore, rejects the Dillon's Rule argument raised by the Nicolls and finds that the Board did not violate Dillon's Rule.

Because there are disputed material facts, namely, what the Nicolls do with the cut grass, whether the Nicolls' cutting of the vegetation despoils or destroys the wetlands on the Property, and whether the Nicolls' mowing impairs the natural functions or alters the natural contour of the wetlands, the Court cannot grant relief as a matter of law, and the Board, therefore, is not entitled to summary judgment.

The Court denies the Board's Motion for Summary Judgment.

### Conclusion

The Court sustains the Board's Demurrer as to Count II of the Amended Complaint for failure to sufficiently state a claim. The Court grants the Nicolls leave to file an amended Complaint within twenty-one days. The Court denies the Board's Motion for Summary Judgment as to Count I of the Amended Complaint.